## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ABIDE NETWORK, INC. | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.** |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST NONPROFIT INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

Abide Network, Inc. ("Abide"), by and through its counsel, Childress Loucks & Plunkett, Ltd., file this Complaint (hereinafter "the Complaint"), against the Defendant, First Nonprofit Insurance Company (hereinafter "Defendant"), and states as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action for breach of contract due to Defendant's failure to pay insurance benefits for damages to covered property that exceed seventy five thousand dollars ($75,000.00), exclusive of pre-judgment interest, court costs and attorneys' fees.

### PARTIES

2.      At all times material herein, Abide Network, Inc. owned the properties listed in Exhibit 1 (referred to herein as the "Insured Property").

3.      Plaintiff is a not-for-profit company with a principal place of business in Nebraska.

4.      At all times material herein, First Nonprofit Insurance Company was incorporated in Delaware with its principal place of business in Illinois.

5.      At all times material herein, First Nonprofit Insurance Company was engaged in the business of underwriting and issuing property insurance policies.

1

6.     At all times material herein, First Nonprofit Insurance Company was licensed by the Nebraska Department of Insurance to sell Commercial Property Insurance Policies in the State of Nebraska.

## JURISDICTION AND VENUE

7.     This Court also possesses jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(c)(1) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial portion of the events or omissions giving rise to this action occurred in this judicial district. In addition, the property that is the subject of this action is situated in this judicial district.

## GENERAL ALLEGATIONS

9.     At all times relevant, Plaintiff owned the Insured Property as listed in Exhibit 1.

10.     First Nonprofit Insurance Company issued to Abide a Commercial Property Insurance Policy, Number PP100026303, effective from or about June 1, 2017 through June 1, 2018 (hereinafter referred to as the "Policy"). A copy of the Policy is attached hereto as Exhibit 2.

11.     Pursuant to the terms of the Policy, Defendant agreed to pay for "direct physical loss of or damage to Covered Property … caused by or resulting from any Covered Cause of Loss occurring during the Term of Coverage."

12.     On or about June 29, 2017, while the Policy was in full force and effect, the Insured Property sustained a direct physical loss of or physical damage to the Insured Property, caused by hail (referred to herein as the "Loss").

13.     Loss from hail is not otherwise excluded or limited under the Policy and is therefore a covered cause of loss.

14.     Plaintiff duly submitted a claim to Defendant under the Policy for its Loss.

15.     Defendant assigned the loss a claim number of 2739075-1.

16.     Defendant hired Envista Forensics, who investigated the Loss on October 27, 2017.

17.     Envista Forensics issued a report on December 8, 2017, finding that the Insured Property was not damaged by hail.

18.     On January 11, 2018, Plaintiff obtained a report and estimate from Paramount Adjusters, Inc. for the cost to repair and/or replace covered damages from the Loss in the amount of $4,165,732.24.

19.     On February 21, 2018, Envista Forensics issued a second report after reviewing the report from Paramount Adjusters revising its conclusions to find hail damage.

20.     On April 26, 2018, Defendant determined the Insured Property sustained a covered loss and estimated the Replacement Cost for the covered loss to be $527,741.41. A copy of the letter from Defendant is attached as Exhibit 3.

## COUNT I
### (Breach of Contract)

21.     Plaintiff re-alleges paragraphs 1 through 21 of the Complaint as though fully set forth herein as paragraph 21.

22.     Pursuant to the terms of the Policy, Defendant has a contractual obligation to fully investigate and adjust the Loss, and pay the full amount of Plaintiff's covered losses, including the costs to repair and/or replace the damage, less applicable deductible.

23.     Pursuant to the terms of the Policy, Defendant agreed to pay for direct physical loss or damage to Covered Property caused by or resulting from any Covered Cause of Loss.

24.     Plaintiff has performed all conditions precedent to its right to recovery under the Policy.

25.     Defendant is liable to Plaintiff for the full amount allowed by the Policy for the Loss.

26.     Defendant refused and continues to refuse to pay for all of the benefits due under the Policy, including the full costs to repair and/or replace the hail and wind damage to the Insured Premises, forcing Plaintiff to litigate.

27.     Defendant breached its contract with Plaintiff by:

    a.     not promptly paying Plaintiff all benefits owed as a result of the covered Loss;

    b.     failing to pay for all consequential damage; and

    c.     not putting Plaintiff in the position it would have been in had it timely performed all of its contractual duties.

28.     As a direct and proximate result of Defendant's breach of contract, Plaintiff:

    a.     suffered and will continue to suffer significant property damage;

    b.     incurred and will continue to incur costs to repair and/or replace the property damage;

    c.     suffered and will continue to suffer consequential damages;

    d.     is entitled to an award of prejudgment interest, taxable costs, and investigatory fees; and

    e.     incurred other expenses as a result Defendant's breach of contract.

WHEREFORE, of Plaintiff, Abide Network, Inc., against Defendant, First Nonprofit Insurance Company and award all general and compensatory damages owed under the Policy,

interest, fees, costs, and reasonable attorneys' fees pursuant to Neb. Rev. Stat. § 44-359, and such other relief as the Court deems appropriate under the circumstances.

## COUNT II
### (Bad Faith)

29.     Plaintiff re-alleges paragraphs 1-28 of the Complaint as though fully set forth herein as paragraph 29.

30.     First Nonprofit Insurance Company sold the Policy purchased by Abide intending to provide benefits for covered losses such as hail storms.

31.     Under the Policy, First Nonprofit Insurance Company owes Abide the duty of good faith and fair dealing to fully and fairly adjust their claims.

32.     First Nonprofit Insurance Company breached its duty by:

    a.     Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

    b.     Compelling insureds or beneficiaries to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by them;

    c.     Refusing to pay claims without conducting a reasonable investigation;

    d.     Failing to affirm or deny coverage of a claim within a reasonable time after having completed its investigation related to such claim;

    e.     Attempting to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of an application; and

    f.     Failing, in the case of the denial of a claim or the offer of a compromise settlement, to promptly provide a reasonable and accurate explanation of the basis for such action.

33.     First Nonprofit Insurance Company knew or recklessly disregarded the fact that there was no reasonable basis for engaging in the conduct alleged in Paragraph 30.

34.     First Nonprofit Insurance Company's denials in part or whole of Abide's claims caused Abide financial distress and pecuniary loss.

35.     First Nonprofit Insurance Company knew or should have known that its decision to deny Abide's claim in whole or part would cause Abide financial distress and pecuniary loss.

36.     First Nonprofit Insurance Company's breach of its covenant of good faith and fair dealing amounts to bad faith breach of the insurance contract, causing Abide to incur injuries, damages, and losses in amounts to be determined at trial.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury on all issues so triable.

Dated: June 21, 2018

Respectfully submitted,

By: _____

Thomas J. Loucks
*Attorney for Plaintiff*
Childress Loucks & Plunkett, Ltd.
11 West Illinois Street, Fourth Floor
Chicago, Illinois 60654
Tel: (312) 494-0200
Fax: (312) 494-0202
service@childresslawyers.com

## GENERAL PROPERTY DECLARATIONS

| LOCATION NUMBER | ADDRESS | SECTION APPLICABLE | LIMIT OF COVERAGE | DEDUCTIBLE AMOUNT | LOSS VALUATION* |
|---|---|---|---|---|---|
| 1-1 | 3335 Fowler Ave. Omaha NE 68111 | Building | $1,100,000 | $10,000 | RC |
| 1-1 | 3335 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $130,000 | $10,000 | RC |
| 2-1 | 3343 Fowler Ave. Omaha NE 68111 | Building | $180,000 | $10,000 | RC |
| 2-1 | 3343 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $11,000 | $10,000 | RC |
| 3-1 | 3120 & 3126 Lake St. Omaha NE 68111 | Building | $1,330,000 | $10,000 | RC |
| 3-1 | 3120 & 3126 Lake St. Omaha NE 68111 | Personal Property of the Insured | $120,000 | $10,000 | RC |
| 4-1 | 3021 Larimore Ave Omaha NE 68111 | Building | $125,111 | $10,000 | RC |
| 4-1 | 3021 Larimore Ave Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 5-1 | 3325 Fowler Ave. Omaha NE 68111 | Building | $137,000 | $10,000 | RC |
| 5-1 | 3325 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 6-1 | 3311 Fowler Ave. Omaha NE 68111 | Building | $160,000 | $10,000 | RC |
| 6-1 | 3311 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 7-1 | 4125 N. 19th St. Omaha NE 68111 | Building | $140,000 | $10,000 | RC |
| 7-1 | 4125 N. 19th St. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 8-1 | 4716 N. 40th Ave. Omaha NE 68111 | Building | $133,000 | $10,000 | RC |
| 9-1 | 5320 N. 25th St. Omaha NE 68111 | Building | $112,000 | $10,000 | RC |
| 9-1 | 5320 N. 25th St. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 10-1 | 3324 Fowler Ave. Omaha NE 68111 | Building | $113,000 | $10,000 | RC |
| 11-1 | 3526 Seward St. Omaha NE 68111 | Building | $133,000 | $10,000 | RC |
| 12-1 | 3976 & 3978 Seward St. Omaha NE 68111 | Building | $147,000 | $10,000 | RC |
| 12-1 | 3976 & 3978 Seward St. Omaha NE 68111 | Personal Property of the Insured | $15,000 | $10,000 | RC |

**Loss Valuation Alternatives**

(ALS) Actual Loss Sustained
(ACV) Actual Cash Value
(FV) Functional Value
(RC) Replacement Cost
(ERC) Enhanced Replacement Cost

**EXHIBIT**

**1**

## GENERAL PROPERTY DECLARATIONS

| LOCATION NUMBER | ADDRESS | SECTION APPLICABLE | LIMIT OF COVERAGE | DEDUCTIBLE AMOUNT | LOSS VALUATION* |
|---|---|---|---|---|---|
| 13-1 | 1605 & 1607 N. 40th St. Omaha NE 68111 | Building | $147,000 | $10,000 | RC |
| 13-1 | 1605 & 1607 N. 40th St. Omaha NE 68111 | Personal Property of the Insured | $15,000 | $10,000 | RC |
| 14-1 | 4116 N. 39th St. Omaha NE 68111 | Building | $118,000 | $10,000 | RC |
| 14-1 | 4116 N. 39th St. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 15-1 | 4123 N. 39th St. Omaha NE 68111 | Building | $70,000 | $10,000 | RC |
| 16-1 | 3169 Fowler Ave. Omaha NE 68111 | Building | $106,000 | $10,000 | RC |
| 16-1 | 3169 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 17-1 | 3436 Sahler St. Omaha NE 68111 | Building | $113,000 | $10,000 | RC |
| 18-1 | 3841 Decatur Omaha NE 68111 | Building | $139,000 | $10,000 | RC |
| 18-1 | 3841 Decatur Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 19-1 | 3180 Meredith Omaha NE 68111 | Building | $131,000 | $10,000 | RC |
| 19-1 | 3180 Meredith Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 20-1 | 3912 N 41ST STREET Omaha NE 68111 | Building | $96,480 | $10,000 | RC |
| 21-1 | 4919 RUGGLES STREET Omaha NE 68111 | Building | $106,000 | $10,000 | RC |
| 22-1 | 3916 N 41ST STREET Omaha NE 68111 | Building | $99,500 | $10,000 | RC |
| 23-1 | 5333 N 35TH STREET Omaha NE 68111 | Building | $57,000 | $10,000 | RC |
| 23-1 | 5333 N 35TH STREET Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 27-1 | 3502. 45th Avenue Omaha NE 68111 | Building | $72,000 | $10,000 | RC |
| 28-1 | 3182 Fowler Avenue Omaha NE 68111 | Building | $105,000 | $10,000 | RC |
| 29-1 | 3519 N. 44th Avenue Omaha NE 68111 | Building | $56,000 | $10,000 | RC |
| 30-1 | 1723 N. 33rd Street Omaha NE 68111 | Building | $685,665 | $10,000 | RC |

**Loss Valuation Alternatives**

(ALS) Actual Loss Sustained
(ACV) Actual Cash Value
(FV) Functional Value
(RC) Replacement Cost
(ERC) Enhanced Replacement Cost

## GENERAL PROPERTY DECLARATIONS

| LOCATION NUMBER | ADDRESS | SECTION APPLICABLE | LIMIT OF COVERAGE | DEDUCTIBLE AMOUNT | LOSS VALUATION* |
|---|---|---|---|---|---|
| 30-1 | 1723 N. 33rd Street Omaha NE 68111 | Personal Property of the Insured | $20,000 | $10,000 | RC |
| 31-1 | 10834 Emmet St Omaha NE 68164 | Personal Property of the Insured | $100,000 | $10,000 | RC |
| 32-1 | 3204 Taylor St. Omaha NE 68116 | Building | $77,200 | $10,000 | RC |
| 33-1 | 3173 Meredith Ave. Omaha NE 68116 | Building | $91,000 | $10,000 | RC |
| 34-1 | 4137 Lake St. Omaha NE 68116 | Building | $126,000 | $10,000 | RC |
| 35-1 | 3223 N.45th Street Omaha NE 68104 | Building | $1,548,480 | $10,000 | RC |
| 35-2 | 3223 N.45th Street Omaha NE 68104 | Building | $1,841,760 | $10,000 | RC |
| 35-3 | 3223 N.45th Street Omaha NE 68104 | Building | $2,483,520 | $10,000 | RC |
| 35-4 | 3223 N.45th Street Omaha NE 68104 | Building | $1,485,120 | $10,000 | RC |
| 35-5 | 3223 N.45th Street Omaha NE 68104 | Building | $2,337,280 | $10,000 | RC |
| 35-6 | 3223 N.45th Street Omaha NE 68104 | Building | $1,520,960 | $10,000 | RC |
| 35-7 | 3223 N.45th Street Omaha NE 68104 | Building | $784,000 | $10,000 | RC |
| 35-8 | 3223 N.45th Street Omaha NE 68104 | Building | $328,000 | $10,000 | RC |
| 36-1 | 4221 Bedford Omaha NE 68104 | Building | $104,800 | $10,000 | RC |
| 37-1 | 4325 Bedford Omaha NE 68104 | Building | $87,680 | $10,000 | RC |
| 43-1 | 1023 N 40th St Omaha NE 68131 | Building | $434,520 | $10,000 | RC |
| 44-1 | 3426 Charles St Omaha NE 68131 | Building | $97,920 | $10,000 | RC |

**Loss Valuation Alternatives**

(ALS) Actual Loss Sustained

(ACV) Actual Cash Value

(FV) Functional Value

(RC) Replacement Cost

(ERC) Enhanced Replacement Cost

## PREMIUM SUMMARY
Attached please find your policy.

Abide Network, Inc DBA: Abide
PO Box 11489
Omaha, NE  68111

EFFECTIVE DATE:          EXPIRATION DATE:

6/1/2017          6/1/2018

INSURANCE COMPANY:  First Nonprofit Insurance Company

POLICY #:                    NPP100026304

PREMIUM:                    $63,066.00
FEES:
STMP FEE:
SL TAX:
FIRE TAX:

TOTAL:                    $63,066.00

YOUR INSURANCE AGENT:          Ellerbrock-Norris Agency
PO Box 816

Hastings, NE 68901

402-463-2461

**EXHIBIT**
**2**

# GENERAL LIABILITY UNMANNED AIRCRAFT ENDORSEMENTS

# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your renewal policy being issued by us:

**PKG 5008 – Exclusion – Unmanned Aircraft**

When this endorsement is attached to your policy, coverage is excluded with respect to all Primary Liability coverages provided by this policy arising out of the ownership, maintenance, use or entrustment to others of any unmanned aircraft. The attachment of this endorsement will result in a reduction in coverage to the extent that an exposure exists with respect to unmanned aircraft.

**This page intentionally left blank**

# GENERAL LIABILITY ENDORSEMENTS
## ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSION
## RECORDING AND DISTRIBUTION OF MATERIAL EXCLUSION

# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsements, which apply to your renewal policy being issued by us:

**PGK 5010 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included**

When this endorsement is attached to your policy coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage. However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

**PKG 5011 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data related Liability – With Limited Bodily Injury Exception**

When this endorsement is attached to your policy coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

**PKG 5012 – Recording And Distribution Of Material Or Information In Violation Of Law Exclusion**

When this endorsement is attached to your policy coverage is excluded for damages arising out of any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA), CAN-SPAM Act of 2003, the Fair Credit Reporting Act (FCRA) or any other similar statute, ordinance or regulation that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**This page intentionally left blank**

AGENCY CUSTOMER ID: _____



# INSURANCE SUPPLEMENT

| AGENCY | CARRIER | NAIC CODE |
|---|---|---|
| Risk Placement Services, Inc. | First Nonprofit Insurance Company | 10859 |

| POLICY NUMBER | APPLICANT / NAMED INSURED | |
|---|---|---|
| NPP1000263 04 | Abide Network, Inc. | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

[X]  I hereby elect to purchase terrorism coverage for a prospective premium of $ 305 _____.

[ ]  I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| _____ | _____ | _____ |
|---|---|---|
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| | | **Effective Date** |

**Includes copyrighted material of the National Association of Insurance Commissioners, with its permission.**

**This page intentionally left blank**





## FIRST NONPROFIT COMMERCIAL POLICY
## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

In the event you need to contact someone about this insurance for any reason, please contact your agent.  If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the insurance company at the address and/or telephone number below.

---

**AmTrust North America**
**Attention: Nonprofit**
233 N. Michigan, Suite 1000
Chicago, IL 60601
Telephone: 1.312.715.3010 / Fax: 1.312.930.0375

---

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent or the insurance company, have your policy number available.

## AmTrust Claims Service

AmTrust's claims staff has an average of 20+ years of experience and provides effective management of claims. Benefits for our customers include a 24/7 centralized call center staffed by special claims operators; prompt payout to injured employees, medical providers and others, return-to-work options initiated through a joint effort, adjusters specialized by claim types, field adjusters to provide direct assistance at loss locations and a highly qualified panel of defense attorneys.

**Information Required for All Claims Reported**
- Description of accident or incident
- Name, phone and/or email of person making the report

**Additional Information Required for Specific Claim Types**
- **For Workers' Compensation**
  - MUST have the injured employee's social security number as it is required by law
  - Description of injury
- **For Property Claims**
  - Physical address of the loss
  - If more than one building on property, must have specific building(s) involved
  - Type of loss, i.e., fire, theft, etc.
  - Description of loss or damage

- **For Motor Vehicle (Auto) Claims**
  - Name, address and contact information of ALL parties involved
  - Make, model and VIN of the insured vehicle
  - Make, model of all other vehicles involved
  - Current location of all vehicles
  - Name and contact information for each driver and all passengers
  - Name and contact information for any known witnesses
- **For General Liability Claims**
  - Physical address of where the loss occurred
  - Name, address and contact information for all persons claiming injury or damage
  - Name, contact information for any known witnesses

---

**General Liability Lines**
Steve Wellbank, Program Manager
P: 312.627.7722
Email: Steve.Wellbank@amtrustgroup.com

**Property Lines**
Don Bullion, Claims Supervisor
P: 214.360.8370
Email: Don.Bullion@amtrustgroup.com

**Commercial Auto - Eastern Region** (CT, DC, DE, IN, KY, MI, ME, MA, MD, NC, NY, NJ, NH, OH, PA, RI, TN, VA, VT, WV)
Jim Vendetto, Claims Manager
P: 800.571.3101
Email: Jim.Vendetto@amtrustgroup.com

**Commercial Auto (all other states)**
Stephen Ramm, Claims Supervisor
P: 214.360.2458
Email: Stephen.Ramm@amtrustgroup.com

---

## FIRST NONPROFIT COMMERCIAL POLICY
### Workers Compensation Claims Contact Information

| | Phone / Fax | Address | Phone / Fax |
|---|---|---|---|
| **AL, AR, GA, MS, NC, SC, TN, VA, WV** | | **CT (assigned risk), DC, DE, MD, NJ, NY, PA** | |
| AmTrust North America<br>P.O. Box 740042<br>Atlanta, GA 30374-0042<br>atlantawcmail@amtrustgroup.com | P: 888.239.3909<br>678.258.8000<br>F: 678.258.8399 | AmTrust North America<br>P.O Box 105010<br>Atlanta, GA 30348-5010<br>jerseywcmail@amtrustgroup.com | P: 888.239.3909<br>F: 678.258.8399 |
| **Debra Thompson**, Claims Manager<br>Debra.Thompson@amtrustgroup.com | Ext. 298329 | **Jacqueline Lynch**, Claims Manager<br>Jacqueline.Lynch@amtrustgroup.com | Ext. 463003 |
| **AZ, CO, LA, NE, NM, OK, OR, SD, TX, UT** | | **IL, IN, MI, KS, KY, MO, IA, MN, WI** | |
| AmTrust North America<br>P.O Box 650767<br>Dallas, TX 75265-0767<br>dallaswcmail@amtrustgroup.com | P: 214.360.8000<br>866.249.4298<br>F: 678.258.8395<br><br>214.360.8560 | AmTrust North America<br>P.O Box 105074<br>Atlanta, GA 30348-5074<br>chicagowcmail@amtrustgroup.com | P: 888.239.3909<br>312.781.0401<br>F: 678.258.8399 |
| **Roy Dykes**, Claims Manager<br>Roy.Dykes@amtrustgroup.com | | **Elly O'Donnell**, Claims Manager<br>Elly.O'Donnell@amtrustgroup.com | Ext.394630 |
| **NEW YORK** | | **CT, MA, ME, NH, RI, VT** | |
| AmTrust North America<br>P.O Box 15096<br>Albany, NY 12212<br>albmail@amtrustgroup.com | P:888.239.3909<br>F: 518.213.1908 | AmTrust North America<br>P.O Box 15096<br>Albany, NY 12212<br>albmail@amtrustgroup.com | P: 888.239.3909<br>F: 678.258.8399 |
| **Susan Howe**, Claims Manager<br>Susan.Howe@amtrustgroup.com | Ext. 511931 | **Brian Lordan**, Claims Manager<br>Brian.Lordan@amtrustgroup.com | Ext. 533391 |
| **Tim Karagiozi**, Work Comp Manager<br>Tim.Karagiozi@amtrustgroup.com | 631.465.1385 | | |
| **FLORIDA** | | **AK, CA, FD, HI** | |
| AmTrust North America of FL<br>P.O Box 310719<br>Boca Raton, FL 33431<br>flclaims@amtrustgroup.com | P: 800.866.8600<br>561.962.9300<br>F: 561.962.0620 | AmTrust North America<br>P.O Box 4026<br>Concord, CA 94524<br>conclaims@amtrustgroup.com | P: 844.601.7760<br>925.288.6600<br>F: 216.643.5500 |
| **Michael Ragusa**, Claims Manager<br>Michael.Ragusa@amtrustgroup.com | Ext. 359357 | **David Harlow**, Claims Manager<br>David.Harlow@amtrustgroup.com | Ext. 726610 |
| **Sherry Douglas**, Claims Manager<br>Sherry.Douglas@amtrustgroup.com | Ext. 363241 | **Michelle Green**, Claims Manager<br>Michelle.Green@amtrustgroup.com | Ext. 763501 |
| **Jeffrey Beason**, Claims Manager<br>Jeffrey.Beason@amtrustgroup.com | 407.551.1726 | **Michael Romero**, Claims Manager<br>Michael.Romero@amtrustgroup.com | 949.313.3959 |
| **Robin Pavlik**, Claims Manager<br>Robin.Pavlik@amtrustgroup.com | Ext. 261122 | | |
| **NEVADA** | | | |
| AmTrust North America<br>P.O Box 4026<br>Concord, CA 94524<br>conclaims@amtrustgroup.com | P: 844.601.7760<br>702.688.5020<br>F: 216.643.5500 | | |
| **Julia Wood**, Claims Manager<br>Julia.Wood@amtrustgroup.com | Ext. 275020 | | |



1 South Wacker Drive, Suite 2380
Chicago, IL 60606
312-715-3010
**MULTIPLE PERIL POLICY
DECLARATIONS**

Policy Number: NPP1000263 04                    Producer: Risk Placement Services, Inc.

Renewal of Policy Number: NPP1000263 03

Named Insured: Abide Network, Inc.
DBA:

Mailing Address: PO Box 11489
                 Omaha NE 68111

| Term of Coverage: From 6/1/2017 | To 6/1/2018 | 12:01 a.m. Local Time at Your Mailing Address Shown Above |
|---|---|---|

First Annual Premium: $63,066.00

### Coverages Provided

In return for your payment of the required premium, we provide the coverage described in this policy.

| Section | Included | |
|---|---|---|
| | Yes | No |
| A. General Conditions | | |
| **Property Insurances** | | |
| B. Terms & Conditions – All Property and Related Coverages | | |
| • Optional Coverages | | |
| C. General Property | ☒ | ☐ |
| D. Income Protection & Extra Expense | ☐ | ☒ |
| E. Specified Personal Property | ☐ | ☒ |
| F. Computers | ☒ | ☐ |
| G. Crime | ☐ | ☒ |
| **Primary Liability Insurances** | | |
| H. Terms & Conditions – Primary Liability Coverages | | |
| • Optional Coverages | | |
| I. Bodily Injury and Property Damage Liability | ☒ | ☐ |
| J. Sexual Abuse Liability | ☒ | ☐ |
| K. Social Work, Foster Care and Counseling Liability | ☒ | ☐ |
| L. Medical Liability | ☒ | ☐ |
| M. Personal and Advertising Injury Liability | ☒ | ☐ |
| N. Non-Owned and Hired Auto Liability | ☐ | ☒ |
| O. Medical Payments | ☒ | ☐ |
| P. Employee Benefits Administration Liability | ☒ | ☐ |

**Additional forms applicable to this policy:**

Date: 6/29/2017                         by: _James f Scardino_
                                        **First Nonprofit Insurance Company**
                                        **Authorized Representative**
04/2010 PKG 1000                          To Report a Loss                        Page 1 of 7
                                        • Dial toll-free #1 (844)777-8323 or visit our
RPSMINN/SC/2017.07.20                     • Website: https://my.rpsins.com/claimsfnol
                                        • Contact Insurer directly (see policy section)

## GENERAL PROPERTY DECLARATIONS

| LOCATION NUMBER | ADDRESS | SECTION APPLICABLE | LIMIT OF COVERAGE | DEDUCTIBLE AMOUNT | LOSS VALUATION* |
|---|---|---|---|---|---|
| 1-1 | 3335 Fowler Ave. Omaha NE 68111 | Building | $1,100,000 | $10,000 | RC |
| 1-1 | 3335 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $130,000 | $10,000 | RC |
| 2-1 | 3343 Fowler Ave. Omaha NE 68111 | Building | $180,000 | $10,000 | RC |
| 2-1 | 3343 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $11,000 | $10,000 | RC |
| 3-1 | 3120 & 3126 Lake St. Omaha NE 68111 | Building | $1,330,000 | $10,000 | RC |
| 3-1 | 3120 & 3126 Lake St. Omaha NE 68111 | Personal Property of the Insured | $120,000 | $10,000 | RC |
| 4-1 | 3021 Larimore Ave Omaha NE 68111 | Building | $125,111 | $10,000 | RC |
| 4-1 | 3021 Larimore Ave Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 5-1 | 3325 Fowler Ave. Omaha NE 68111 | Building | $137,000 | $10,000 | RC |
| 5-1 | 3325 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 6-1 | 3311 Fowler Ave. Omaha NE 68111 | Building | $160,000 | $10,000 | RC |
| 6-1 | 3311 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 7-1 | 4125 N. 19th St. Omaha NE 68111 | Building | $140,000 | $10,000 | RC |
| 7-1 | 4125 N. 19th St. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 8-1 | 4716 N. 40th Ave. Omaha NE 68111 | Building | $133,000 | $10,000 | RC |
| 9-1 | 5320 N. 25th St. Omaha NE 68111 | Building | $112,000 | $10,000 | RC |
| 9-1 | 5320 N. 25th St. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 10-1 | 3324 Fowler Ave. Omaha NE 68111 | Building | $113,000 | $10,000 | RC |
| 11-1 | 3526 Seward St. Omaha NE 68111 | Building | $133,000 | $10,000 | RC |
| 12-1 | 3976 & 3978 Seward St. Omaha NE 68111 | Building | $147,000 | $10,000 | RC |
| 12-1 | 3976 & 3978 Seward St. Omaha NE 68111 | Personal Property of the Insured | $15,000 | $10,000 | RC |

**Loss Valuation Alternatives**

(ALS) Actual Loss Sustained
(ACV) Actual Cash Value
(FV) Functional Value
(RC) Replacement Cost
(ERC) Enhanced Replacement Cost

## GENERAL PROPERTY DECLARATIONS

| LOCATION NUMBER | ADDRESS | SECTION APPLICABLE | LIMIT OF COVERAGE | DEDUCTIBLE AMOUNT | LOSS VALUATION* |
|---|---|---|---|---|---|
| 13-1 | 1605 & 1607 N. 40th St. Omaha NE 68111 | Building | $147,000 | $10,000 | RC |
| 13-1 | 1605 & 1607 N. 40th St. Omaha NE 68111 | Personal Property of the Insured | $15,000 | $10,000 | RC |
| 14-1 | 4116 N. 39th St. Omaha NE 68111 | Building | $118,000 | $10,000 | RC |
| 14-1 | 4116 N. 39th St. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 15-1 | 4123 N. 39th St. Omaha NE 68111 | Building | $70,000 | $10,000 | RC |
| 16-1 | 3169 Fowler Ave. Omaha NE 68111 | Building | $106,000 | $10,000 | RC |
| 16-1 | 3169 Fowler Ave. Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 17-1 | 3436 Sahler St. Omaha NE 68111 | Building | $113,000 | $10,000 | RC |
| 18-1 | 3841 Decatur Omaha NE 68111 | Building | $139,000 | $10,000 | RC |
| 18-1 | 3841 Decatur Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 19-1 | 3180 Meredith Omaha NE 68111 | Building | $131,000 | $10,000 | RC |
| 19-1 | 3180 Meredith Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 20-1 | 3912 N 41ST STREET Omaha NE 68111 | Building | $96,480 | $10,000 | RC |
| 21-1 | 4919 RUGGLES STREET Omaha NE 68111 | Building | $106,000 | $10,000 | RC |
| 22-1 | 3916 N 41ST STREET Omaha NE 68111 | Building | $99,500 | $10,000 | RC |
| 23-1 | 5333 N 35TH STREET Omaha NE 68111 | Building | $57,000 | $10,000 | RC |
| 23-1 | 5333 N 35TH STREET Omaha NE 68111 | Personal Property of the Insured | $10,000 | $10,000 | RC |
| 27-1 | 3502. 45th Avenue Omaha NE 68111 | Building | $72,000 | $10,000 | RC |
| 28-1 | 3182 Fowler Avenue Omaha NE 68111 | Building | $105,000 | $10,000 | RC |
| 29-1 | 3519 N. 44th Avenue Omaha NE 68111 | Building | $56,000 | $10,000 | RC |
| 30-1 | 1723 N. 33rd Street Omaha NE 68111 | Building | $685,665 | $10,000 | RC |

**Loss Valuation Alternatives**

(ALS) Actual Loss Sustained

(ACV) Actual Cash Value

(FV) Functional Value

(RC) Replacement Cost

(ERC) Enhanced Replacement Cost

## GENERAL PROPERTY DECLARATIONS

| LOCATION NUMBER | ADDRESS | SECTION APPLICABLE | LIMIT OF COVERAGE | DEDUCTIBLE AMOUNT | LOSS VALUATION* |
|---|---|---|---|---|---|
| 30-1 | 1723 N. 33rd Street Omaha NE 68111 | Personal Property of the Insured | $20,000 | $10,000 | RC |
| 31-1 | 10834 Emmet St Omaha NE 68164 | Personal Property of the Insured | $100,000 | $10,000 | RC |
| 32-1 | 3204 Taylor St. Omaha NE 68116 | Building | $77,200 | $10,000 | RC |
| 33-1 | 3173 Meredith Ave. Omaha NE 68116 | Building | $91,000 | $10,000 | RC |
| 34-1 | 4137 Lake St. Omaha NE 68116 | Building | $126,000 | $10,000 | RC |
| 35-1 | 3223 N.45th Street Omaha NE 68104 | Building | $1,548,480 | $10,000 | RC |
| 35-2 | 3223 N.45th Street Omaha NE 68104 | Building | $1,841,760 | $10,000 | RC |
| 35-3 | 3223 N.45th Street Omaha NE 68104 | Building | $2,483,520 | $10,000 | RC |
| 35-4 | 3223 N.45th Street Omaha NE 68104 | Building | $1,485,120 | $10,000 | RC |
| 35-5 | 3223 N.45th Street Omaha NE 68104 | Building | $2,337,280 | $10,000 | RC |
| 35-6 | 3223 N.45th Street Omaha NE 68104 | Building | $1,520,960 | $10,000 | RC |
| 35-7 | 3223 N.45th Street Omaha NE 68104 | Building | $784,000 | $10,000 | RC |
| 35-8 | 3223 N.45th Street Omaha NE 68104 | Building | $328,000 | $10,000 | RC |
| 36-1 | 4221 Bedford Omaha NE 68104 | Building | $104,800 | $10,000 | RC |
| 37-1 | 4325 Bedford Omaha NE 68104 | Building | $87,680 | $10,000 | RC |
| 43-1 | 1023 N 40th St Omaha NE 68131 | Building | $434,520 | $10,000 | RC |
| 44-1 | 3426 Charles St Omaha NE 68131 | Building | $97,920 | $10,000 | RC |

**Loss Valuation Alternatives**

(ALS) Actual Loss Sustained

(ACV) Actual Cash Value

(FV) Functional Value

(RC) Replacement Cost

(ERC) Enhanced Replacement Cost

# DECLARATIONS
## SECTION F.
## COMPUTERS

### Limits, Deductible and Valuation

---

**1. Limits of Coverage**

- Loss or damage occurring on premises owned or leased by the Named Insured

    Equipment Limit: $10,000 per loss

    Electronic Data and Media:   30% of the above Equipment Limit, subject to a maximum of $30,000 per loss. This is an additional amount of insurance.

    Loss of Income and Necessary Extra Expense Limit:   20% of the above Equipment Limit, subject to a maximum of $20,000 per loss. This is an additional amount of insurance.

- Loss or damage occurring at locations other than on premises owned or leased by the Named Insured

    Equipment Limit:  $2,500 per loss

    Electronic Data and Media Limit:  $1,000 per loss

    Loss of Income and Necessary Extra Expense Limit:  $500 per loss

---

**2. Deductible**

$ 500 per loss.  Applicable only to loss or damage to equipment

---

**3. Equipment Loss Valuation – Check only one box**

☒ Enhanced Replacement Cost

☐ Replacement Cost

☐ Actual Cash Value

---

# CRIME DECLARATIONS
## SECTION G.

| Coverage Agreement | Limit of Coverage | Deductible Amount |
|---|---|---|
| 1.   Employee Theft | __NOT PROVIDED__ Per **Occurrence**<br><br>__NOT PROVIDED__ Policy Year Aggregate | __NOT PROVIDED__ Per **Occurrence**<br><br>__NOT PROVIDED__ Policy Year Aggregate |
| 2.   Forgery or Alteration | __NOT PROVIDED__ Per **Occurrence** | __NOT PROVIDED__ Per **Occurrence** |
| 3.   Theft of Money and Securities | __NOT PROVIDED__ Per **Occurrence** | __NOT PROVIDED__ Per **Occurrence** |

Employee Benefit Plans:
NOT PROVIDED

## PRIMARY LIABILITY DECLARATIONS

|  | LIMITS OF COVERAGE |
|---|---|
| **Combined Policy Year Annual Aggregate Limit – Applicable to Sections I., J., K. and L.** | $      3,000,000 |
| **Section I.**<br>**Bodily Injury and Property Damage Liability**<br>Each Occurrence Limit | $      1,000,000 |
| **Section J.**<br>**Sexual Abuse Liability**<br>Each Sexual Abuse Occurrence Limit | $      1,000,000 |
| **Section K.**<br>**Social Work, Foster Care and Counseling Liability**<br>Each Social Work Occurrence Limit | $      1,000,000 |
| **Section L.**<br>**Medical Liability**<br>Each Medical Incident Limit | $      1,000,000 |
| **Section M.**<br>**Personal and Advertising Injury Liability**<br>Policy Year Annual Aggregate Limit | $      1,000,000 |
| **Section N.**<br>**Non-Owned and Hired Auto Liability**<br>Each Accident Limit | $   NOT PROVIDED |
| **Section O.**<br>**Medical Payments** | $      5,000  per Person<br>$      25,000  per Occurrence<br>$      75,000  Policy Year Annual Aggregate |
| **Section P.**<br>**Employee Benefit Administration Liability** | $      1,000,000  each Claim<br>$      1,000,000  Policy Year Annual Aggregate |

**This page intentionally left blank**

First Nonprofit Insurance Company
1 South Wacker Dr
Suite 2380

**Policy Number:**
NPP1000263 04
**Named Insured:**
Abide Network, Inc.

# FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|---|---|---|---|
| | PKG1000 | (04/10) | MULTIPLE PERIL POLICY DECLARATIONS |
| CG | PKG1000N | (07/11) | NAMED INSURED EXTENSION ENDORSEMENT |
| CF | PKG1000N | (07/11) | NAMED INSURED EXTENSION ENDORSEMENT |
| CM | PKG1000N | (07/11) | NAMED INSURED EXTENSION ENDORSEMENT |
| CG | PKG1001 | (03/06) | MULTIPLE PERIL POLICY BOOKLET |
| CF | PKG1001 | (03/06) | MULTIPLE PERIL POLICY BOOKLET |
| CM | PKG1001 | (03/06) | MULTIPLE PERIL POLICY BOOKLET |
| CF | PKG1106 | (03/06) | LOSS PAYEE |
| CM | PKG1106 | (03/06) | LOSS PAYEE |
| CG | PKG1113 | (03/06) | OMNIBUS ADDITIONAL INSURED ENDORSEMENT |
| CF | PKG1113 | (03/06) | OMNIBUS ADDITIONAL INSURED ENDORSEMENT |
| CM | PKG1113 | (03/06) | OMNIBUS ADDITIONAL INSURED ENDORSEMENT |
| CF | PKG1208 | (04/06) | NAMED MORTGAGEE |
| CG | PKG1301 | (08/11) | VACANT OR UNOCCUPIED BUILDINGS |
| CF | PKG1301 | (08/11) | VACANT OR UNOCCUPIED BUILDINGS |
| CM | PKG1301 | (08/11) | VACANT OR UNOCCUPIED BUILDINGS |
| CF | PKG1305 | (04/10) | COINSURANCE ENDORSEMENT - PROPERTY |
| CG | PKG1901 | | ADDITIONAL INSURED |
| CG | PKG2200 | (03/06) | TEACHERS LIABILITY |
| CF | PKG2200 | (03/06) | TEACHERS LIABILITY |
| CM | PKG2200 | (03/06) | TEACHERS LIABILITY |
| CG | PKG2301 | (01/12) | MEDICAL LIABILITY COVERAGE TO INCLUDE PHYSICAL THERAPY |
| CG | PKG2601 | (05/13) | RETROACTIVE DATE |
| CG | PKG5000 | (05/15) | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| CF | PKG5000 | (05/15) | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| CM | PKG5000 | (05/15) | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| CG | PKG5001 | (05/15) | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CF | PKG5001 | (05/15) | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CM | PKG5001 | (05/15) | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG | PKG5003 | (05/15) | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM |
| CF | PKG5003 | (05/15) | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM |
| CM | PKG5003 | (05/15) | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM |
| CG | PKG5008 | (06/16) | EXCLUSION - UNMANNED AIRCRAFT |
| CG | PKG5010 | (02/17) | EXCLUSION ACCESS OR DISCLOSURE - LIMITED BODILY INJURY NOT INCLUDED |
| CG | PKG5012 | (02/17) | RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION |
| CG | PKGNE1103 | (03/09) | NEBRASKA CHANGES |
| CF | PKGNE1103 | (03/09) | NEBRASKA CHANGES |
| CM | PKGNE1103 | (03/09) | NEBRASKA CHANGES |

Issued Date: 6/29/2017

Page 1 of 0

DEC FORM SCH   0408

This page intentionally left blank

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured Extension**

Bridge Church
Bridge RWC

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**



# MULTIPLE PERIL POLICY

First Nonprofit Insurance Company
1 South Wacker Drive, Suite 2380
Chicago, Illinois 60606

03/2006 PKG 1001



# INTRODUCTION

This document is an insurance policy.  It is large and contains the particulars on the insurance coverage provided.  The Table of Contents is arranged to help you locate various parts of the policy.

Where we use the terms "you" or "your", we mean the organization shown as Named Insured in the Policy Declarations.  The terms "we", "us" or "our" mean the First Nonprofit Insurance Company.

**PLEASE READ YOUR POLICY.**  The Policy Declarations and Declarations for each Section of this policy will show you the types of insurance provided, the locations insured and the Limits of Coverage provided.  Other coverages or special conditions may appear in the Policy Declarations or the Declarations for each of the Sections of this policy.  The deductible, the amount you pay on a covered loss, will appear in the Declarations for each Section.  Information in the Policy Declarations and each Section Declarations as well as the applicability of any other wording in this policy may be changed by endorsement.  You should also read any endorsements that are attached.

Throughout this policy, other words and phrases that have special meaning appear in **bold face**. Refer to the Definitions of each Section of this policy for the meaning of these defined words and phrases.

---

**Various provisions in this policy restrict coverage.**

**Read the entire policy carefully to determine rights, duties and what is and is not covered.**

# MULTIPLE PERIL POLICY
## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| Section A: | General Conditions Applicable to This Entire Policy | 3 |
| Section B: | Terms & Conditions – All Property and Related Coverages | 6 |
| Section C: | General Property Coverage | 14 |
| Section D: | Income Protection and Extra Expense Coverage | 18 |
| Section E: | Specified Personal Property Coverage | 21 |
| Section F: | Computer Coverage | 21 |
| Section G: | Crime Insurance | 24 |
| Section H: | Terms & Conditions Applicable To Primary Liability Insurance | 31 |
| Section I: | Bodily Injury and Property Damage Liability | 42 |
| Section J: | Sexual Abuse Liability | 43 |
| Section K: | Social Work, Foster Care and Counseling Liability | 44 |
| Section L: | Medical Liability | 45 |
| Section M: | Personal and Advertising Injury Liability | 46 |
| Section N: | Nonowned and Hired Auto Liability | 48 |
| Section O: | Medical Payments | 49 |
| Section P: | Employee Benefit Administration Liability | 50 |

# SECTION A
# GENERAL CONDITIONS APPLICABLE
# TO THIS ENTIRE POLICY

All Sections included in this policy are subject to the following General Conditions:

## A. AUTHORIZATION

The first Named **Insured** shown in the Policy Declarations shall act on behalf of all persons or organizations **insured** under this policy with respect to giving notice of **claim**s, giving and receiving notice of cancellation, payment of premium, receiving return premium, and receipt and acceptance of endorsements.

## B. BANKRUPTCY

Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations.

## C. CANCELLATION AND NONRENEWAL

1. Cancellation

   a. If we cancel this policy, we will mail by proof of mail to the first Named **Insured** shown in the Policy Declarations written notice of cancellation at least:

      (i)   10 days before the effective date of cancellation if we cancel for nonpayment of premium;

      (ii)  45 days before the effective date of cancellation if we cancel for any other reason.

   b. The first Named **Insured** shown in the Policy Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

1. Nonrenewal

   a. If we decide not to renew or continue this policy we will mail by proof of mail to the first Named **Insured** shown in the Policy Declarations written notice at least 45 days before the end of the Term of Coverage shown in the Policy Declarations.

3. Notice Requirements

   a. If we fail to mail proper notice of nonrenewal and the first Named **Insured** obtains other insurance, this policy will end on the effective date of that insurance.

   b. We will mail by proof of mail our notice of nonrenewal to the first Named **Insured**'s last mailing address known to us. Proof of mailing will be sufficient proof of notice.

## D. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. This policy's terms, including information in all its Declarations, can be amended or waived only by written endorsement issued by us and made a part of this policy.

## E. COVERAGE TERRITORY

The Coverage Territory under this Multiple Peril Policy is:

1. The United States of America (including its territories and possessions); Puerto Rico; and Canada.

2. International waters or airspace, provided the injury or damage occurs in the course of travel or transportation to or from any place included in subparagraph 1. above.

3. All other parts of the world if the injury or damage arises out of:

   a. Goods or products made or sold by you in the territory described in subparagraph 1. above; or

   b. The activities of a person whose home is in the territory described in subparagraph 1. above but is away for a short time on your business; and

   provided your responsibility to pay **damages** is determined in a **suit** on the merits, in the territory described in subparagraph 1 above or in a settlement we agree to.

## F. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the Term of Coverage shown in the Policy Declarations and up to three years afterward.

## G. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to providing coverage and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not

warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

These conditions apply not only to us, but also to any organization that makes inspections, surveys, reports or recommendations on our behalf.

## H. LEGAL ACTION AGAINST US

No person or organization may bring a **suit** against us under this insurance unless there has been full compliance with all of the terms of the applicable Section(s) and said action is filed within 12 months of the inception of loss.

Nor does any person or organization have a right under this insurance to join us as a party or otherwise bring us into a **suit** asking for **damages** from an **insured** unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **insured** obtained after an actual trial; but we will not be liable for **damages** that are not payable under the terms of this insurance or that are in excess of the applicable Limits of Coverage. An agreed settlement means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

## I. OTHER INSURANCE

This insurance is primary with respect to any other insurance available to the **insured** if such other insurance was purchased by and issued to the **insured** specifically to apply in excess hereof. Otherwise, this insurance shall apply in excess of all other insurance available to the **insured**. Without waiving the foregoing, if any insurer affording other insurance to the **insured** denies primary coverage under its policy, we will respond under this policy as though such other insurance were not available, provided that we shall be subrogated to all rights of the **insured** to such other insurance and the **insured** shall do all things necessary to enforce such rights.

## J. POLICY YEAR

The first Policy Year starts at 12:01 am local time at the location of the mailing address of the Named **Insured** indicated in the Declarations of this policy on the date shown in the Policy Declarations, and ends at 12:01 am local time on the date indicated in the Declarations of this policy or 365 days after the beginning of the Term of Coverage, whichever is a shorter period. If the policy is extended after issuance for an additional term of less than 365 days then this additional period will be considered part of the immediately preceding Policy Year. In order to determine the number of Policy Years under this policy, divide the number of days in the Term of Coverage by 365. The resulting whole number is the number of Policy Years. For example, a policy with a Term of Coverage of 1,000 days will have two Policy Years: a first Policy Year of 365 days and a second Policy Year of 635

days. A policy with a Term of Coverage of 1,125 days will have three Policy Years: a first and second Policy Year of 365 days each and a third Policy Year of 395 days.

## K. PREMIUM AUDIT

If the premium is shown on the applicable Declarations as a provisional premium, we will compute the final earned premium at the end of each audit period shown on the applicable Declarations. If it is more than the provisional premium paid by you, we will bill you for the difference. If the final earned premium is less than the provisional premium paid by you, we will return the difference to you, subject to any minimum premiums indicated on the applicable Declarations. You must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to us at the end of the audit period or when requested by us.

## L. PREMIUMS

The first Named **Insured** shown in the Policy Declarations is responsible for the payment of all premiums; and will be the payee for any return premiums we pay.

## M. REPRESENTATIONS; CONCEALMENT; FRAUD

By accepting this policy, you agree:

a. The statements in all the Declarations included with this policy are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

In the event of fraud by you at any time, the entire policy is void. It is also void if you or any other **insured**, at any time, intentionally conceal or misrepresent a material fact concerning this policy's Section(s), Covered Property, your interest in Covered Property, or a claim.

## N. SUBROGATION: TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this insurance has rights to recover **damages** or insurance coverage from another, those rights are transferred to us to the extent of our payment and we shall be subrogated to all rights of that person or organization. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them.

## O. TERM OF COVERAGE

The Term of Coverage is shown in the Policy Declarations.

## P.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent.

## Q.  LIBERALIZATION

During the Term of Coverage, if we amend this policy form in such a way that would broaden the coverage without an additional premium, then the broadened coverage feature will apply to losses under this insurance policy which occur subsequent to the effective date of the first broadened policy we issue in the state of your mailing address.

**IN WITNESS WHEREOF**, we have caused this policy to be signed by our President and Secretary and countersigned on the Policy Declarations of this insurance policy by our duly authorized representative.

_____
**SECRETARY**

_____
**PRESIDENT**

# SECTION B

## TERMS & CONDITIONS – ALL PROPERTY AND RELATED COVERAGES

If one or more of the following types of insurance are provided under this policy:

**Section C:** General Property Coverage

**Section D:** Income Protection and Extra Expense Coverage

**Section E:** Specified Personal Property Coverage

**Section F:** Computer Coverage

Then the following Terms & Conditions apply to them.

## A. EXCLUSIONS & LIMITATIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following, except as otherwise expressly provided herein. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Ordinance or Law**

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use, occupancy or repair of any property; or

   (2) Requiring the tearing down, physical alteration or upkeep of any property, including the cost of removing its debris.

   This exclusion applies whether the loss results from:

   i. An ordinance or law that is enforced even if the property has not been damaged; or

   ii. The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of debris, following a physical loss to that property.

   However, we will pay up to $100,000 during the Policy Year in the event of physical damage to covered property otherwise excluded above for the increased costs you sustain in the course of repair, rebuilding or replacement of damaged parts of property incurred to comply with enforcement of an ordinance or law regulating the construction or repair of buildings or establishing zoning or land use requirements at the loss location. Such ordinance or law must be in force at the time of loss. The property involved must be insured at its Replacement Cost value. We will not pay these increased costs unless and until the property is actually repaired or replaced.

   b. **Earth Movement and Volcanic Eruption**

   (1) Any earth movement such as an earthquake, landslide, **sinkhole collapse** or

   earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage; or

   (2) Volcanic eruption, explosion or effusion. But if loss or damage by fire, building glass breakage or volcanic action results, we will pay for that resulting loss or damage.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   (3) However, subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to $10,000 during the Policy Year to cover all loss in total for all locations to your buildings or personal property at locations described in the General Property Declarations, and otherwise insured under Sections C., D. or E. of this policy, caused by earth movement or volcanic eruption during the Term of Coverage, including any resulting **collapse** of buildings and personal property.

   c. **Governmental Action**

   Seizure or destruction of property by order of governmental authority. But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would otherwise be covered.

   d. **Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination, however caused. But if loss or damage by fire results, we will pay for that resulting loss or damage.

   e. **Service Interruption**

   The failure of power or other utility service supplied to the locations described in the General Property Declarations, however caused, if the failure occurs away from the described locations. Failure includes lack of sufficient capacity and reduction in supply. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or damage.

f. **War and Military Action**

    (1) War, including undeclared or civil war;

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

    (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

    (2) Mudslide or mudflow;

    (3) Water that backs up from a sewer or drain; or

    (4) Water under the ground surface pressing on, or flowing or seeping through:

        (a) Foundations, walls, floors or paved surfaces;

        (b) Basements, whether paved or not; or

        (c) Doors, windows or other openings.

    (5) Water which leaks from plumbing, heating lines or appliances due to freezing or damage to such lines or appliances, unless:

        (a) You do your best to maintain heat in the building or structure; or

        (b) You drain the equipment and shut off the water supply if the heat is not maintained;

    (6) Presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more.

But if loss or damage by fire, lightning, explosion or sprinkler leakage results, we will pay for that resulting loss or damage subject to the applicable Limit of Coverage.

However, subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to $100,000 for all occurrences during the Policy Year at all locations for loss or damage to property described in the General Property Declarations due to causes of loss enumerated in items (1), (2), (3), (4), (5) or (6) above. For purposes of determining coverage, a loss is defined as insured damage to all insured locations that occurs within 72 hours following the initial damage.

h. **Fungus, Mold, Mildew, Wet Rot, Dry Rot and Bacteria**

    (1) Presence, growth, proliferation, spread or any activity of fungus, mold, mildew, wet or dry rot or bacteria.

This exclusion does not apply when fungus, mold, mildew, wet or dry rot or bacteria result from fire or lightning. Also, if fungus, wet or dry rot or bacteria result in fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; **sinkhole collapse**; volcanic action; **falling objects**; weight of snow, ice or sleet; or **water damage**, we will pay for the loss or damage so caused.

    (2) However, subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to $50,000 for all occurrences during the Term of Coverage at locations described in the General Property Declarations, for loss or damage due to fungus, mold, mildew, wet or dry rot, or bacteria that is excluded under paragraph (1) above. Loss or damage includes:

        a. Direct physical loss or damage caused by fungus, mold, mildew, wet or dry rot, or bacteria, including the cost of removal of the fungus, mold, mildew, wet or dry rot, or bacteria;

        b. The cost to tear out and replace any part of the building or other property as needed to gain access to the fungus, mold, mildew, wet or dry rot, or bacteria; and

        c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe the fungus, mold, mildew, wet or dry rot, or bacteria are present.

Regardless of the number of claims, the number of claimants, the number of locations, or the number of buildings, $50,000 is the most we will pay for the total of all loss or damage arising out of all occurrences that take place during the Policy Year. With respect to a particular occurrence of loss resulting in fungus, mold, mildew, wet or dry rot, or bacteria, we will not pay more than $50,000 even if the fungus, mold, mildew, wet or dry rot, or bacteria continues to be present, or active, or recurs during the Policy Year of a subsequent policy issued to you by us.

i. **Equipment Tests**

Sudden and accidental breakdown caused by any of the following equipment tests: a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel or an insulation breakdown test of any type of electrical equipment.

j.   **Failure To Protect Perishable Goods**

Your failure to use all reasonable means to protect perishable goods from damage following direct physical loss or damage otherwise insured under this policy.

2.   We will not pay for loss or damage caused directly or indirectly by any of the following, except as otherwise expressly provided herein:

a.   Delay, loss of use or loss of market.

b.   Smoke, vapor or gas from agricultural smudging or industrial operations.

c.   (1)   Wear and tear;

(2)   Rust, corrosion, decay, color-fading, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3)   Smog;

(4)   Discharge, dispersal, seepage, migration, release or escape of **pollutants** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by loss or damage otherwise insured under this policy.

(5)   Settling, cracking, shrinking or expansion;

(6)   Insects, birds, rodents or other animals;

(7)   The following causes of loss to personal property:

(a)   Dampness or dryness of atmosphere;

(b)   Changes in or extremes of temperature; or

(c)   Marring or scratching.

But if loss or damage by fire, lightning, wind, explosion, riot, aircraft, vehicles, smoke, **falling objects**, vandalism and malicious mischief or the abrupt falling down or caving in of building foundations or those of adjacent buildings or structures results from an excluded cause of loss listed in 2.c.(1) through 2.c.(7), we will pay for that resulting loss or damage.

d.   Liquids other than water, powders or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment caused by or resulting from freezing, unless:

(1)   You do your best to maintain heat in the building or structure; or

(2)   You drain the equipment and shut off the water supply if the heat is not maintained.

e.   Theft of property while unattended in or on any vehicle or trailer, unless:

(1)   Contained in a securely locked body or compartment of the vehicle; and

(2)   There are visible marks of forced entry.

f.   Dishonest or criminal acts by you, any of your partners, members, managers, employees (including leased employees), directors, officers, trustees, authorized representatives or anyone to whom you entrust the property for any purpose acting alone or in collusion with others and whether or not occurring during the hours of employment.

g.   Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.   This includes wrongful conversion.

h.   Rain, snow, ice or sleet to personal property in the open.

i.   **Collapse** of buildings and personal property, except as expressly provided below:

(1)   We will pay for direct physical loss to covered buildings caused by **collapse** arising out of one or more of the following:

(a)   Fire, lightning, wind or hail, explosion, aircraft, vehicles, smoke, **falling objects**, riot or civil commotion, vandalism and malicious mischief, leakage from fire extinguishing equipment, **falling objects**, **water damage**, or the abrupt falling down or caving in of its foundation or the foundation of adjacent buildings or structures provided that such abrupt falling down or caving in is not caused by earth movement or volcanic eruption.

(b)   Hidden decay or insect or vermin damage unknown to any of the officers and directors of the Named Insured at the time of the **collapse**;

(c)   Weight of contents, equipment, animals or people within the building;

(d)   Weight or movement of snow, ice, sleet, or rain which collects on a roof; or

(e)   Use of defective materials or methods in construction, remodeling or renovation if the **collapse** occurs during the course of the construction, remodeling or renovation.

(2)   We will pay for loss or damage to covered personal property directly resulting from **collapse** of a building that is insured under this policy.

j.   Your neglect to use all reasonable means to save and preserve property from further damage at and after the time of loss.

k. Faulty, inadequate, defective or negligent:

(1) Planning, zoning, development, surveying or siting;

(2) Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading or earth compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the location(s) described in the General Property Declarations.

l. Acts, decisions, errors or omissions, including the failure to act or decide, of any person, group, organization or governmental body.

m. The following causes of loss to Covered Property used for the generation, transmission or utilization of energy or built to operate under vacuum pressure other than weight of contents:

(1) Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

(2) Any gradually developing condition;

(3) Any defect, programming error, programming limitation, computer virus, malicious code, loss of **electronic data and media**, loss of access, loss of use, loss of functionality or other condition within or involving **electronic data and media** or media of any kind;

(4) Contamination by a **hazardous substance**; or

(5) Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

## B. PROPERTY LIMITATIONS

1. We will not pay for loss or damage to property, or any loss that is a consequence of loss, as described and limited below.

a. The interior of any building or structure, or personal property in the building, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to it.

c. Property that has been transferred to any person or moved to a location beyond your control on the basis of unauthorized instructions.

d. Building materials and supplies not attached as part of the building or structure unless held for sale by you, caused by or resulting from theft.

2. For loss or damage by theft, subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, the following property is covered only up $2,500: jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals.

3. In the case of loss or damage to any part of a machine or unit consisting of two or more parts when complete for use, our payment will be limited to the value of the part or parts lost or damaged or, at your option, to the cost and expense of repairing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

## C. LOSS CONDITIONS

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If you and we disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

Even if there is an appraisal, we will still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage to Covered Property:

a. Notify the police if a law may have been broken.

b. Give us prompt notice of the loss or damage. Include a description of the property involved.

c.  As soon as possible, give us a description of how, when and where the loss or damage occurred.

d.  Take all reasonable steps to protect the Covered Property from further damage.  If feasible, set the damaged property aside and in the best possible order for examination.  Also keep a record of your expenses, for consideration in the settlement of the claim.

e.  At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

f.  Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

g.  If requested, permit us to question you under oath and outside the presence of any other insured at such times as may be reasonably required about any matter.  In such event, your answers must be signed.

h.  Send us a signed, sworn statement in proof of loss containing the information we request.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

i.  Cooperate with us in the investigation or settlement of the claim.

4.  **Loss Payment**

a.  In the event of loss or damage covered by this Section at our option, we will either:

(1)  Pay the value of lost or damaged property;

(2)  Pay the cost of repairing or replacing the lost or damaged property;

(3)  Take all or any part of the property at an agreed or appraised value; or

(4)  Repair, rebuild or replace the property with other property of like kind and quality.

b.  We will not pay you more than your financial interest in the Covered Property.

c.  We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

d.  We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

e.  We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss, if:

(1)  You have complied with all of the terms of this Section; and

(2)  (a)  We have reached agreement with you on the amount of loss; or

(b)  An appraisal award has been made.

5.  **Privilege to Adjust With Owner**

We may adjust losses with the owners of lost or damaged property if other than you. We have the right to settle the loss with the owner(s) of the property.  If we pay the owners, such payments will satisfy your claims against us for the owners' property.  A receipt for payment from the owner(s) of that property will satisfy any claim of yours.  We will not pay the owners more than their financial interest in the Covered Property.

6.  **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice.  At your option, the property will be returned to you.  You must then return to us the amount we paid to you for the property.  We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Coverage shown in the General Property Declarations.

7.  **Vacancy**

a.  Vacant Building

This Loss Condition applies to each building otherwise insured under this policy that is vacant at the time of loss.

A vacant building is one that is neither:

(1)  A camp building; nor

(2)  A seasonal building; nor

(3)  A new building under construction; nor

(4)  An existing building in the active process of structural renovation or rehabilitation, and

Which has not been used for its intended purpose for a period of 60 consecutive days immediately prior to the date of loss.

b.  Security

We will not pay for loss to a vacant building, otherwise insured under this policy, unless all of the following requirements are met at the time of the loss:

(1)  All ground floor windows must be intact, secured or boarded.

(2)  All doors must be locked and secured.

(3)  All buildings must be inspected by the Named Insured weekly.

(4)  The building's heating systems must be operable and kept on during the normal heating season.

c.  Cause of Loss or Damage

We will not pay for loss to a vacant building caused by any of the following:

(1)  Vandalism;

(2) Sprinkler leakage arising from freezing;

(3) Damage by water other than from sprinkler leakage;

(4) Theft or attempted theft; or

(5) Acts of trespassers.

d.  Valuation

We will determine the value of loss to a vacant building that complies with the security requirements of subparagraph b. above, and is otherwise insured by this policy at 85% of the Actual Cash Value at the time of such loss, even if the Declarations indicate that Replacement Cost or Functional Value apply.

e.  Deductible

Each loss at a vacant building that complies with the security requirements of subparagraph b. above and is otherwise insured by this policy will be subject to a $25,000 deductible.

8. **Valuation**

Regardless of the valuation method that applies, we will not pay more for loss or damage than the least of:

(1) The Limit of Coverage applicable to the lost or damaged property;

(2) The cost calculated under the applicable valuation provisions; or

(3) The amount you actually expend that is necessary to repair or replace the lost or damaged property.

a.  Actual Cash Value. We will determine the value of Covered Property in the event of loss or damage at Actual Cash Value at the time of loss or damage except as provided in (1), (2), and (3) below or unless otherwise indicated in the Declarations.

(1) **Stock** you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

(2) Glass at the cost of replacement with safety glazing material if required by law.

(3) Tenant's **Improvements and betterments** at:

(a) Actual Cash Value of the lost or damaged property if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the

installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this determination of proportionate value.

(a) Nothing if others pay for repairs or replacement.

b.  Replacement Cost. If the Declarations indicate that Replacement Cost is to apply, we will determine the value of Covered Property in the event of loss or damage as follows:

(1) At Replacement Cost as of the time of loss or damage, without deduction for depreciation, except as provided below.

(2) We will not pay Replacement Cost for any loss or damage:

(a) Until the lost or damaged property is actually repaired or replaced with the requirement that repairs must be made at the same premises as the damaged property; and

(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(3) We will not pay more for loss or damage on a Replacement Cost basis than the least of:

(a) The Limit of Coverage applicable to the lost or damaged property;

(b) The cost to replace, on the same premises, the lost or damaged property with other property of comparable material and quality and used for the same purpose; or

(c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(4) You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a Replacement Cost basis. In the event you elect to have loss or damage settled on an Actual Cash Value basis, you may still make a claim for Replacement Cost, provided you notify us of your intent to do so within 180 days after the loss or damage.

(5) **Stock** owned by you, including merchandise you purchased for resale, shall be valued at the cost for you to replace it, and not your selling price.

(6) Tenant's **Improvements and betterments** at:

(a) Actual Cash Value of the lost or damaged property if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will

determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

c. Functional Value. If the Declarations indicate that Functional Value is to apply, we will determine the value of the building in the event of loss or damage as follows:

(1) If you contract for repair or replacement of the loss or damage to restore a building(s) shown in the General Property Declarations for the same occupancy and use within 180 days of the damage, we will pay the smallest of the amount established by the following (a), (b) or (c):

(a) The Limit of Coverage applicable to the damaged building(s) shown in the Declarations;

(b) The Functional Value as defined below:

In the event of a total loss, the reasonable cost to replace the damaged building on the same site with a building that is functionally equivalent to the damaged building without regard to the design or construction of the damaged building, plus the amount you actually spend to demolish and clear the site of the damaged building.

In the event of a partial loss, the reasonable cost to repair or replace the damaged portion of the building, subject to a maximum of the product of the number of square feet of damaged building multiplied by the per square foot cost, as determined by the use of Marshall-Swift service at the time of loss, of new building construction in the same location and of the same construction type and occupancy and use.

(c) The amount you actually spend that is necessary to repair or replace the lost or damaged building.

(2) If you do not make a claim under paragraph (1) above, we will pay the smallest of the following (a), (b) or (c):

(a) The Limit of Coverage shown in the Declarations as applicable to the damaged building(s);

(b) The market value of the damaged building, exclusive of the land value immediately prior to such loss; such market value to be determined by an independent fee appraiser certified as a Member of the American Appraisal Institute and possessing the MAI designation; or

(c) The reasonable cost to repair or replace the damaged building to functional use or the functional equivalent on the same site, with less costly material, less allowance for physical depreciation and economic obsolescence.

9. **Pairs, Sets or Parts**

a. Pair or Set. In case of loss to any part of a pair or set we may:

(1) Repair or replace any part to restore the pair or set to its value before loss; or

(2) Pay the difference between the value of the pair or set before and after loss.

b. Parts. In case of loss to any part of Covered Specified Personal Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

10. **Recoveries**

Any recovery or salvage on loss will accrue entirely to our benefit until the sum paid by us has been made up.

## D. DEFINITIONS

1. **Collapse** means:

As respects, buildings, an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of **collapse**.

A part of a building that is standing is not considered to be in a state of **collapse** even if it has separated from another part of the building.

A building that is standing or any part of a building that is standing is not considered to be in a state of **collapse** even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. **Computer equipment** means your computers, **electronic data** processing equipment and component parts thereof, whether your property or the property of others leased, rented or under your control and for which you are liable.

3. **Electronic data and media** means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of **electronic data and media**, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. **Electronic data and media** does not include your **stock** of prepackaged software.

4. **Falling objects** does not include loss or damage to:

   a. Personal property in the open; or

   b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

5. **Hazardous substance** means any substance, other than ammonia, that has been declared hazardous to health by a governmental agency.

6. **Improvements and betterments** are fixtures, alterations, installations or additions:

   a. Made a part of the building or structure you occupy but do not own;

   b. You made or acquired at your expense but cannot legally remove.

7. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, by way of description and not limitation, materials to be recycled, reconditioned or reclaimed.

8. **Sinkhole collapse** means loss or damage caused by the sudden sinking or **collapse** of land into underground empty spaces created by the action of water.

9. **Stock** means merchandise held for sale or re-sale, raw materials and in-process or finished goods.

10. **Water damage** means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) that is situated on the location(s) described in the General Property Declarations and contains water or steam.

## E. PROPERTY CONDITIONS

1. **Mortgage Holders**

   a. The term mortgage holder includes trustee.

   b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the General Property Declarations in their order of precedence, as interests may appear.

   c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy or one of its Sections, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

      (1) Pays any premium due under this policy at our request if you have failed to do so;

      (2) Submits a signed sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

   All of the terms of this policy will then apply directly to the mortgage holder.

   e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy or one of its Sections:

      (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

      (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   f. If we cancel this policy, we will give written notice to the mortgage holder at least:

      (1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

      (2) 45 days before the effective date of cancellation if we cancel for any other reason.

g.   If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

2.   **Reinstatement of Limit After Loss**

The Limit of Coverage for Sections C, D, E, and F will not be reduced by the payment of any claim.

3.   **Suspension**

When any Covered Property either used for the generation, transmission or utilization of energy or built to operate under pressure is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend insurance from that piece(s) of property.  We can do this by mailing or delivering a written notice of immediate suspension to your address as shown in the Policy Declarations, or at the address where the equipment is located.  Once suspended in this way, the insurance can be reinstated only by written notice from us.  If we suspend this insurance, you will get a pro rata refund of premium.  But the suspension will be effective even if we have not yet made or offered a refund.

4.   **Jurisdictional Inspections**

If any Covered Property used either for the generation, transmission or utilization of energy or built to operate under pressure requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

# SECTION C
# GENERAL PROPERTY COVERAGE

**This Section C applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown in the General Property Declarations.**

**Except as expressly described below, this Section is subject to Section A. General Conditions Applicable to this Entire Policy and to Section B. Terms and Conditions – All Property and Related Coverages.**

## A. COVERAGE AGREEMENT

We will pay for direct physical loss of or damage to Covered Property at the locations described in the General Property Declarations caused by or resulting from any Covered Cause of Loss occurring during the Term of Coverage.

1.   **Covered Property**

Covered Property, as used in this Section, means the following types of property for which a Limit of Coverage is shown in the General Property Declarations:

a.   **Buildings**

Buildings, meaning the building(s) or structure(s) at the locations described in the General Property Declarations including the following within 100 feet of such building(s):

(1)   Completed additions;

(2)   Permanently installed fixtures, machinery and equipment;

(3)   Outdoor fixtures and signs;

(4)   Personal property owned by you, or that you are liable for, that is used to maintain or service the building or structure or its premises, including:

fire extinguishing equipment; outdoor furniture and furniture in public areas; floor coverings, draperies and shades; appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and storm doors and windows; and

(5)   Materials, equipment, supplies and temporary structures used for making additions, alterations or repairs to the building or structure.

b.   **Personal Property**

Your personal property located in or on the building(s) at the locations described in the General Property Declarations or in the open (or in a vehicle) within 100 feet of such building(s) consisting of the following:

(1)   Furniture and fixtures;

(2)   Machinery and equipment;

(3)   **Stock**;

(4)   All other personal property owned by you;

(5)   Labor, materials or services furnished by you or arranged by you on personal property of others;

(6)   Your use interest as tenant in **improvements and betterments**; and

(7)   Leased personal property that you have a contractual responsibility to insure.

c.   **Accounts Receivable**

We will pay up to an additional $50,000 for the actual amount you are unable to collect from third parties because of the loss or damage to your accounts receivable records, and:

(1) The interest charges on any loan required to offset damaged collections;

(2) Collection expenses which are above normal because of such loss;

(3) Expenses you have incurred in order to restore your records; and

(4) Expenses you have incurred because the records were moved under threat of a Covered Cause of Loss.

d. **Personal Property Off Premises**

If your personal property is insured under this policy and if your personal property is temporarily away from location(s) described in the General Property Declarations, then we will pay, subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, up to an additional $10,000 for loss or damage by a Covered Cause of Loss, subject to the following:

(1) This coverage only applies to the first 90 days that your personal property is at a location within the Coverage Territory other than location(s) described in the General Property Declarations.

(2) If you are liable, we will cover personal property of others in your care, custody or control.

(3) We will cover property in transit within the Coverage Territory on vehicles you own, lease or operate.

e. **Fences, Walks and Outbuildings**

At locations described in the General Property Declarations, we will pay up to an additional $25,000 for loss or damage to outbuildings, fences and walks.

Outbuildings are buildings used to store vehicles, or store equipment and supplies relating to the service of your premises. Outbuildings do not include buildings used for habitation, recreation, meeting, business or farming operations.

f. **Newly Acquired or Constructed Property**

(1) Provided that the loss or damage occurred during the first 90 days of your ownership or other insurable interest, subject to expiration of this policy, and subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to an additional $500,000 for physical loss or damage to:

a. Your new buildings while being built on locations described in the General Property Declarations; and

b. Buildings you acquire subsequent to the inception date of this policy at locations

other than the locations described in the General Property Declarations,

(2) We will pay up to an additional $100,000 per loss for physical loss or damage to personal property which is located within such buildings..

g. **Outdoor Swimming Pools**

Swimming pools and pool facilities at locations described in the General Property Declarations shall be insured under this policy as buildings.

h. **Personal Property of Others**

You may extend personal property coverage, as otherwise provided under this policy, to apply to personal effects owned by your officers or your employees or others at locations described in the General Property Declarations.

The most we will pay for loss or damage to such property not owned by you is an additional $5,000 per person or organization up to an additional $30,000 per occurrence. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

i. **Radio or TV Antennas**

Subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to an additional $2,000 for physical loss or damage to radio or TV antennas attached to the building at locations described in the General Property Declarations.

j. **Trees, Lawns, Plants and Shrubs**

Subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to an additional $25,000 at each location for damage caused by fire, lightning, explosion, vehicles, aircraft, riot, civil commotion, vandalism or theft to trees, lawns, plants, and shrubs on the locations described in the General Property Declarations. A maximum of $1,500 will be paid for any one tree, plant or shrub.

k. **Animals**

Subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, we will pay up to an additional $25,000 at each location for damage caused by fire, lightning, explosion, vehicles, aircraft, riot, civil commotion, vandalism or theft to live animals on the locations described in the General Property Declarations. A maximum of $10,000 for any one animal will be paid.

2. **Property Not Covered**

Subject to all other provisions, conditions, limitations, restrictions and exclusions of this policy, except as provided above, Covered Property does not include:

a.  Vehicles or self-propelled machines that:

    (1)  Are automobiles; or

    (2)  Are licensed for use on public roads; or

    (3)  Are operated principally at locations other than those described in the General Property Declarations

    (4)  Are aircraft;

    (5)  Are watercraft other than rowboats or canoes out of the water and stored at locations described in the General Property Declarations.

b.  Accounts receivable (other than as provided in Section A.1.c. above), accounts, bills, currency, food stamps, or other evidences of debt, money, notes or securities.

c.  Except as provided in Paragraph A.1.k. above, live animals.

d.  Except as provided in Paragraph A.1.e. above, bridges, roadways, fences, outbuildings, walks, patios or other paved surfaces;

e.  Contraband, or property in the course of illegal transportation or trade;

f.  The cost of excavations, grading, backfilling or filling;

g.  The foundations of buildings, structures, equipment or machinery.

h.  Land (including land on which the property is located), septic tanks, cess pools, lawns, growing crops or water;

i.  Harvested crops not located within buildings;

j.  Personal property while airborne or waterborne;

k.  Bulkheads, pilings, piers, wharves or docks;

l.  Property that is covered under another Section of this policy or under any other insurance policy in which it is more specifically described;

m.  Retaining walls that are not part of a building;

n.  Underground pipes, flues or drains;

o.  The cost to research, replace or restore the information on valuable papers, computers, computer discs and other records, other than as provided in paragraph B. Additional Coverages, 9. below.

p.  The reproduction cost of electronic data, software and other data or programs stored on electronic equipment or disks, tapes or drives or other electronic medium.

## B.  ADDITIONAL COVERAGES

The following expense reimbursement coverages only apply in the event they are directly incurred by the Named Insured and arise out of direct physical loss or damage to Covered Property at locations described in the General Property Declarations. The limits that apply to these Additional Coverages are included within the Section C. Limit of Coverage shown in the General Property Declarations unless specifically stated otherwise in the provisions for each Additional Coverage.

1.  **Debris Removal**

    a.  We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the Term of Coverage.  The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

        (1)  The date of direct physical loss or damage; or

        (2)  The date the policy ends.

    b.  The most we will pay under this Additional Coverage is 25% of:

        (1)  The amount we pay for the direct loss or damage; plus

        (2)  The deductible in this policy applicable to that loss or damage.

    c.  This Additional Coverage does not apply to costs to:

        (1)  Extract **pollutants** from land or water; or

        (2)  Remove, restore or replace contaminated or polluted land or water.

    d.  If

        (1)  The sum of loss or damage and debris removal expense exceeds the applicable Limit of Coverage shown in the General Property Declarations; or

        (2)  The actual amount of debris removal expense exceeds the amount payable under subparagraph b., above;

    we will pay up to $5,000 in addition to the applicable Limit of Coverage for each location listed in the General Property Declarations in any one occurrence.

2.  **Preservation of Property**

    If it is necessary to move Covered Property from the location(s) described in the General Property Declarations to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

    a.  While it is being moved or while temporarily stored at another location; and

    b.  Only if the loss or damage occurs within 30 days after the property is first moved.

3. **Pollutant Cleanup and Removal**

We will pay your expense to extract **pollutants** from land or water at the location(s) described in the General Property Declarations if the discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused by or results from a Covered Cause of Loss that occurs during the Term of Coverage. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

a. The date of direct physical loss or damage; or

b. The date the policy ends.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of **pollutants**. But we will pay for testing which is performed in the course of extracting the **pollutants** from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each Policy Year.

4. **Expenses for Loss Adjustment**

We will pay up to $1,000 for a Covered Cause of Loss to prepare loss information, inventories and appraisals. However, we will not pay for the services of a public adjuster.

5. **Extra Expense When Section D. Is Not Purchased**

This Additional Coverage only applies if the Declarations of this Policy indicate that Section D. is not provided.

We will pay up to $10,000 in addition to the otherwise applicable limit of coverage for your actual operating costs in excess of those necessarily incurred needed to continue normal operations after a covered property loss insured by this Section C.

We will not pay for loss of income or the cost of repairing or replacing damaged property or records. This Additional Coverage applies only for the length of time needed with reasonable speed to repair or replace the damaged property.

In the event any Section D., Income Protection & Extra expense, Limit of Coverage is shown in the General Property Declarations for locations where loss or damage occurs, this Additional Coverage does not apply. Further, this Additional Coverage is not to apply as additional insurance above coverage provided by Section D.

Paragraph E. Deductible of this Section does not apply.

6. **Expediting Expense**

With respect to Covered Property lost or damaged by a Covered Cause of Loss, we will pay, up to $25,000 in addition to the otherwise applicable limit of coverage for

the reasonable extra cost to make temporary repairs and to expedite permanent repairs or replacement.

Paragraph E. Deductible of this Section does not apply.

7. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for fire department service charges:

a. Assumed by contract or agreement prior to loss; or

b. Required by local ordinance.

Paragraph E. Deductible of this Section does not apply.

8. **Fire Extinguisher Recharge**

We will pay the cost to recharge a fire extinguisher if it has been used to combat a fire.

Paragraph E. Deductible of this Section does not apply.

9. **Valuable Information and Records - Cost of Research**

We will pay your costs to research, reconstruct, replace or restore the lost information on lost or damaged valuable papers and records for which duplicates do not exist. But this Additional Coverage does not apply to valuable papers and records that exist as **electronic data and media**. This Additional Coverage is limited to fire; lightning; explosion; wind or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; **sinkhole collapse**; volcanic action; **falling objects**; weight of snow, ice or sleet; or **water damage**; and **collapse** as set forth in A. Exclusions & Limitations, 2. i. **Collapse** of buildings and personal property, of Section B. The most we will pay under this Additional Coverage is $50,000 at each location described in the General Property Declarations. We will also pay for the cost of blank material for reproduction of the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Coverage on your personal property and therefore coverage of such costs is not additional insurance.

10. **Food Products**

In the event of sudden and accidental breakdown of machinery or equipment which is Covered Property used for refrigeration of food, we will pay up to a total of $25,000 for your loss of food products due to spoilage or contamination from the release of refrigerants, including but not limited to ammonia and any necessary expenses you incur to reduce the amount of loss payable under this Additional Coverage.

11. **Water System Damage Repair**

If loss or damage insured under this policy is caused by or results from water or other liquid, arising out of the

malfunction of an appliance or building system, then we will also pay the cost to tear out and replace any part of the building or structure to facilitate the repair or replacement of the system or appliance from which the water or other liquid escaped.

We will not pay the cost of repairing or replacing the system or appliance itself.

## C. COVERED CAUSE(S) OF LOSS

Covered Cause(s) of Loss means risks of direct physical loss or damage unless excluded or limited in Paragraph A. Exclusions & Limitations of Section B. Terms & Conditions – All Property and Related Coverages of this Policy.

## D. EXCLUSIONS & LIMITATIONS

This Section C. is subject to A. Exclusions & Limitations of Section B. Terms & Conditions – All Property and Related Coverages of this policy.

## E. LIMITS OF COVERAGE

The most we will pay for loss or damage in any one occurrence is the Section C. Limit of Coverage shown in the General Property Declarations.

## F. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the General Property Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the Section C. Limit of Coverage shown in the General Property Declarations. The Deductible will apply only once per occurrence, even when separate Limits of Coverage apply.

# SECTION D

# INCOME PROTECTION & EXTRA EXPENSE COVERAGE

**This Section D. applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown in the General Property Declarations.**

**Except as expressly described below, this Section is subject to Section A. General Conditions Applicable to this Entire Policy and to Section B. Terms and Conditions – All Property and Related Coverages.**

## A. COVERAGE AGREEMENT

1. At locations to which this Section D. applies as described in the General Property Declarations, and subject to the Limits of Coverage and other provisions of this policy, we will pay for:

   a. Actual loss of **income** you sustain and the

   b. Necessary **extra expense** you incur,

   During the **period of restoration** and necessitated by physical loss or damage to covered property at the described locations caused by a Covered Cause of Loss.

   If this Section D. applies to an **extra expense** loss then B. Additional Coverages, 5. **Extra Expense**, of Section C. does not apply.

2. Further, if the above paragraph applies, we will also pay the **extra expense** to avoid or minimize the **suspension** of your **operations** and to continue **operations**:

   At the location(s) described in the General Property Declarations; or

   At replacement premises or at temporary locations, including:

   Relocation expenses; and

   Costs to equip and operate the replacement or temporary locations.

2. We will pay to repair or replace any property or research, replace or restore the lost information on damaged valuable papers and records to the extent it reduces the

   amount of loss that otherwise would have been payable under this Section D.

   This insurance is subject to the Limit of Coverage in paragraph D. below.

4. **Civil Authority**

   We will pay for the actual loss of **income** you sustain and necessary **extra expense** caused by action of civil authority that prohibits access to the locations described in the General Property Declarations due to direct physical loss of or damage to property, other than at the described locations, caused by or resulting from any Covered Causes of Loss. This Additional Coverage will apply for a period of up to four consecutive weeks from the date of that action.

   This insurance is subject to the Limit of Coverage in paragraph D. below.

5. **Newly Acquired Locations**

   We will pay for the actual loss of **income** you sustain and necessary **extra expense** you incur due to physical loss or damage to covered property at locations not indicated in

the General Property Declarations, which you acquire subsequent to the inception date of this policy provided that the loss or damage occurred during the first 90 days of your ownership or other insurable interest, subject to expiration of this policy.

This insurance is subject to the Limit of Coverage in paragraph D. below.

6. **Service Interruption**

A. Exclusions & Limitations, 1.e. Service Interruption of Section B. does not apply to the coverage under the following two paragraphs.

We will pay for the actual loss of **income** and **extra expense** you sustain due to the failure of power or other utility service supplied to the locations to which this Section D. applies as described in the General Property Declarations caused by a Covered Cause of Loss, if the failure occurs away from the described locations.

If the failure of power or other utility service is due to a sudden and accidental breakdown to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with those services, this coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the sudden and accidental breakdown.

This insurance is subject to the Limit of Coverage in paragraph D. below.

## B. COVERED CAUSES OF LOSS

Covered Cause(s) of Loss means risks of direct physical loss or damage unless excluded or limited in Paragraph A. Exclusions & Limitations of Section B. Terms & Conditions – All Property and Related Coverages of this Policy or in Paragraph C. below.

## C. EXCLUSIONS & LIMITATIONS

This Section D. is subject to A. Exclusions & Limitations of Section B. Terms & Conditions – All Property and Related Coverages.

Further, the following additional exclusions and limitations apply:

1. We will not pay for any loss caused by or resulting from:

   a. Damage to or destruction of finished stock; or

   b. The time required to reproduce finished stock.

   This exclusion does not apply to **extra expense**.

2. We will not pay for any increase of loss caused by or resulting from:

   a. Delay in rebuilding, repairing or replacing the property or resuming **operations**, due to interference at the location of the rebuilding, repair or replacement by strikers or other persons;

   b. Suspension, lapse or cancellation of any license, lease or contract.  But if the suspension, lapse or cancellation is directly caused by the **suspension** of **operations**, we will cover such loss that affects your **income** during the **period of restoration**;

3. We will not pay for:

   a. Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

   b. Any **extra expense** caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the **period of restoration**; or

   c. Any other consequential loss.

4. Section B. Exclusions & Limitations, 1.h. Fungus, Wet Rot, Dry Rot and Bacteria, is replaced with the following:

   Presence, growth, proliferation, spread or any activity of fungus, wet or dry rot or bacteria.

   This exclusion does not apply when fungus, wet or dry rot or bacteria result from fire or lightning.

## D. LIMITS OF COVERAGE

1. The most we will pay for loss in any one occurrence under this Section D. is the lesser:

   The Section D. Limit of Coverage shown in the General Property Declarations; or

   The actual loss sustained for not more than 12 consecutive months from the date of direct physical loss or damage.

2. The most we will pay under Coverage Agreement 4. for each described premises is $50,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each Policy Year.

3. The most we will pay under Coverage Agreement 5. for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each Policy Year.

4. The most we will pay under Coverage Agreement 6. for each described premises is $50,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each Policy Year.

## E. DEDUCTIBLE

No deductible applies to this Section D.

## F. ADDITIONAL LOSS CONDITIONS

The following loss conditions also apply or are modified as follows for this Section D.:

1.  **Loss Determination**

    a.  The amount of **income** loss will be determined based on:

        (1) The net **income** of the operation before the direct physical loss or damage occurred;

        (2) The likely net **income** of the operation if no loss or damage occurred, but not including any **income** that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause(s) of Loss on customers or on other businesses;

        (3) The operating expenses, including payroll expenses, necessary to resume **operations** with the same quality of service that existed just before the direct physical loss or damage; and

        (4) Other relevant sources of information, including:

            (a) Your financial records and accounting procedures;

            (b) Bills, invoices and other vouchers; and

            (c) Deeds, liens or contracts.

    b.  The amount of **extra expense** will be determined based on:

        (1) All expenses that exceed the normal operating expenses that would have been incurred by **operations** during the **period of restoration** if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

            (a) The salvage value that remains of any property bought for temporary use during the **period of restoration**, once **operations** are resumed; and

            (b) Any **extra expense** that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance;

        (2) All necessary expenses that reduce the **income** loss that otherwise would have been incurred.

    c.  **Resumption of Operations**

        We will reduce the amount of your:

        (1) **income** loss, other than **extra expense**, to the extent you can resume your **operations**, in whole or in part, by using damaged or undamaged property (including merchandise or **stock**) at the location(s) described in the General Property Declarations or elsewhere; and

        (2) **extra expense** loss to the extent you can return **operations** to normal and discontinue such **extra expense**.

If you do not resume **operations**, or do not resume **operations** as quickly as possible, we will pay based on the length of time it would have taken to resume **operations** as quickly as possible.

2.  **Duties in the Event of Loss**

    The following additional Duty in the Event of Loss applies:

    j.  Resume all or part of your **operations** as quickly as possible.

## G. ADDITIONAL DEFINITIONS

The following definitions also apply to this Section D.:

1.  **Extra expense** means necessary expenditures you incur during the **period of restoration** that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause(s) of Loss.

2.  **Finished stock** means **stock** you have manufactured. **Finished stock** does not include **stock** you have manufactured that is held for sale on the premises of any retail outlet covered under this Section D.

3.  **Income** means net profit or loss that would have been earned or incurred and continuing normal operating expenses, including payroll, actually incurred.

4.  **Operations** mean the type of activities occurring at location described in the General Property Declarations.

5.  **Period of Restoration** means the period of time that:

    Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause(s) of Loss at the location(s) described in the General Property Declarations; and

    Ends on the earlier of the date when the property at the described location(s) should be repaired, rebuilt or replaced with reasonable speed and similar quality; or the date when the business is resumed at a new permanent location.

    **Period of restoration** does not include any increased period required due to the enforcement of any law that:

    a.  Regulates the construction, use or repair, or requires the tearing down of any property; or

    b.  Regulates the prevention, control, repair, clean up or restoration of environmental damage.

    The expiration date of this policy will not cut short the **period of restoration**.

6.  **Suspension** means the slowdown or cessation of your business activities.

# SECTION E
# SPECIFIED PERSONAL PROPERTY

**This Section E applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a limit is shown in the General Property Declarations. Except as expressly described below, this Section is subject to Section A. General Conditions Applicable to this Entire Policy and to Section B. Terms and Conditions – All Property and Related Coverages.**

## A. COVERAGE AGREEMENT

We will pay for direct physical loss of or damage to Covered Specified Personal Property as described in the General Property Declarations.

1.   **Covered Specified Personal Property**

Covered Specified Personal Property means property as described in the General Property Declarations of this policy.

2.   **Property Not Covered**

Covered Specified Personal Property does not include: buildings, structures, land, animals, underground foundations, piping, sideway fences, jewels, jewelry, watches, currency, money, bullion, notes, securities, stamps, deeds, accounts, bills, evidences of debt, letters of credit, passports, documents, tickets, plans, blueprints, specifications or other valuable papers.

## B. COVERED CAUSE(S) OF LOSS

Covered Cause(s) of Loss means risks of direct physical loss unless the loss is excluded or limited in Section B. Terms & Conditions – All Property and Related Coverages.

## C. EXCLUSIONS & LIMITATIONS

This Section E. is subject to A. Exclusions & Limitations of Section B., Terms & Conditions – All Property and Related Coverages.

## D. LIMITS OF COVERAGE

The most we will pay for loss or damage in any one occurrence is the Section E. Limit of Coverage shown in the General Property Declarations.

## E. DEDUCTIBLE

We will not pay for loss in any one occurrence until the amount of loss exceeds the applicable Deductible Amount shown in the General Property Declarations.  We will then pay the amount of the loss in excess of the Deductible, up to the applicable Limit of Coverage shown in the General Property                                                                    Declarations.

# SECTION F
# COMPUTER COVERAGE

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown in the General Property Declarations.**

**Except as expressly described below, this Section is subject to Section A. General Conditions Applicable to this Entire Policy and to Section B. Terms and Conditions – All Property and Related Coverages.**

## A. COVERAGE AGREEMENT

We will pay for direct physical loss of or damage to **covered computers** and **electronic data or media** stored on **covered computers** due to a covered cause of loss and the loss of **income** or necessary **extra expense** you sustain or incur during the thirty days immediately subsequent to such physical loss or damage and arising out of such physical loss or damage.

## B. ADDITIONAL COVERAGES

The following coverages only apply in the event they are directly incurred by the Named Insured and arise out of direct physical loss of or damage to **covered computers**:

1.   **Duplicate Data**

We cover direct physical loss or damage by a covered cause of loss to your duplicate and back-up **electronic data and media** stored at locations other than those described in the Declarations, subject to a maximum amount of $25,000 at any one storage location.

2.   **Mysterious Disappearance**

We cover direct physical loss by mysterious disappearance of **covered computers** subject to the following:

a. A per loss deductible of at least $1,500 will be subtracted from each loss. If the per loss deductible, indicated in paragraph 2. of the Declarations for this Section F., coverage is higher than $1,500, then the higher, indicated deductible will apply. All mysterious disappearance loss under $1,500 is not insured.

b. In addition to the deductible, you will participate in each loss. Your participation percentage is 35% of the loss excess of the deductible.

c. We will pay 65% of the full valuation of each loss as determined in accordance with the Additional Loss conditions of this Section F., the per loss maximum amount, and the Policy Year maximum amount below.

d. The per loss maximum amount is $5,000.

e. The Policy Year maximum amount is $10,000.

f. **Electronic data and media**, loss of **income** and extra expense are not covered for mysterious disappearance.

g. The following example illustrates how a mysterious disappearance loss would be adjusted in the event of the simultaneous mysterious disappearance of two computers with an Enhanced Replacement Cost value of $8,000. This example assumes this loss is the first such loss during the Policy Year.

| Enhanced Replacement Cost Valuation | $8,000 |
| Per Loss Deductible | $1,500 |
| | $6,500 |
| | x .65 |
| Our 65% Participation | $4,225 |
| Your 35% Participation | $2,275 |

3. **Unnamed Locations**

Subject to all other provisions, conditions, limitations and exclusions of this policy we will pay up to $2,500 per loss for loss or damage to owned or leased electronic data processing equipment and component parts hereof occurring at locations other than those shown in the General Property Declarations. **Electronic data and media** on such equipment at unnamed locations are covered for a maximum amount of $1,000 per loss.

## C. COVERED CAUSE(S) OF LOSS

Covered Cause(s) of Loss means risks of direct physical loss or damage unless the loss is excluded or limited in Section B. Terms & Conditions – All Property and Related Coverages or

D. Additional Exclusions & Limitations of this Section F. below.

## D. EXCLUSIONS & LIMITATIONS

1. All Exclusions & Limitations of Section B, are deleted.

2. We will not pay for loss, damage or expense caused by or resulting from:

a. Dampness or dryness of atmosphere, extremes of temperature, corrosion or rust, unless such condition(s) directly result from physical damage to the air conditioning system that services the covered computers when such damage was caused by a Covered Cause of Loss.

b. Wear and tear, inherent vice, vermin, insects, gradual deterioration, depreciation or obsolescence;

c. Actual work upon the property covered, unless fire or explosion ensues, and then only for loss, damage or expense caused by such ensuing fire or explosion;

d. Unexplained loss, mysterious disappearance or shortage disclosed upon taking inventory except as covered by B. Additional Coverages, 2. of this Section F.

3. Coverage for loss of **income** or necessary **extra expense** does not apply when loss is caused by damage to **electronic data or media**.

## E. LIMITS OF COVERAGE

The most we will pay for loss or damage to **covered computers** in any one occurrence is the Section F. Limit of Coverage shown in the Declarations. The most we will pay for **electronic data or media** is 30% of the Equipment Limits shown in the Section F. Limits of Coverage, subject to a maximum per loss limit of $30,000. The most we will pay for loss of **income** or necessary **extra expense** is 20% of the Equipment Limit shown in the Section F. Limits of Coverage, subject to a maximum per loss limit of $20,000.

## F. ADDITIONAL LOSS CONDITIONS

1. **Computer Equipment** Valuation

Paragraph 8. of C. Loss Conditions of Section B does not apply to this Section F. We will determine the value of lost or damaged covered computers in accordance with the valuation methods described below:

a. Actual Cash Value means the replacement cost of the lost or damaged equipment with other equipment of the same kind quality, capacity and speed, less the physical depreciation of the lost or damaged equipment measured as of the date of loss or damage.

b. Replacement Cost means the cost to replace the lost or damaged equipment with other equipment of the

same kind, quality, capacity and speed as of the date of the loss or damage. However, if the lost or damaged equipment is not replaced within one hundred and twenty (120) days of the loss or damage we shall not be liable for more than its Actual Cash Value.

c.  Enhanced Replacement Cost means an amount not more than 125% of the Replacement Cost (as defined above) incurred by the insured within 120 days of the loss or damage. Enhanced Replacement Cost represents the cost to purchase replacement equipment that performs all functions the lost or damaged equipment performed, but the replacement equipment may be of a different kind, quality, capacity or speed and perform additional functions. However, if the lost or damaged equipment is not replaced within one hundred and twenty (120) days of the loss or damage, we will not pay more than the lost or damaged equipment's Actual Cash Value.

However, in no event shall we be obligated to pay more than the Section F. Limit of Coverage shown in the General Property Declarations.

2.  **Electronic Data and Media** Valuation

Our payment for loss of or damage to **electronic data and media** shall not exceed:

a.  As respects information, facts, and similar data, the actual reproduction cost of the lost or damaged information, facts, and similar data, provided it is actually reproduced.

b.  As respects computer programs, software, and all media upon which they are stored, created or used (including but not limited to hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer data and software which are used with electronically controlled equipment), the actual cost to repair or replace the lost or damaged software with material of the same kind and quality.

In no event shall we be obligated to pay more than the Section F. Limit of Coverage shown in the General Property Declarations.

## G. ADDITIONAL DEFINITION

**Covered computers**

1.  **Covered computers** means:

    a.  **Computer equipment**

    b.  **Electronic data and media**.

**Covered computers** does not include:

a.  Radios, televisions, cellular telephones, heating and refrigeration systems, automobiles, electrical wiring systems of buildings.

b.  Property you own which is rented or leased to others while away from your premises.

c.  Supportive documentation such as flow charts, record formats or narrative descriptions except as they are converted to data form and then only in that form.

d.  Data or media that cannot be replaced with others of the same kind or quality unless covered for a specific amount per item (as per schedule on file with us).

2.  **Extra expense** means necessary expenditures you incur that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause(s) of Loss.

3.  **Income** means the net profit or loss that would have been earned or incurred and the continuing normal operating expenses, including payroll, actually incurred.

# SECTION G

# CRIME INSURANCE

**This Section G. applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown in the Crime Declarations.**

## A. COVERAGE AGREEMENTS

Coverage is provided under only the Coverage Agreements described below for which a Limit of Coverage is shown in the Crime Declarations.

1.  **Employee Theft Insurance**

    We will pay for loss of or damage to **money**, **securities**, and **other property** resulting directly from **theft** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons.

2.  **Forgery or Alteration Insurance**

    a.  We will pay for loss resulting directly from **forgery** or alteration of checks, drafts, promissory notes, or

other similar written promises, orders or directions to pay a sum certain in **money** that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

b. If you are sued for refusing to pay any instrument covered under A. Coverage Agreements, 2.a. above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense.  The amount that we will pay is in addition to the **Forgery** or Alteration Limit of Coverage.

3. **Theft of Money and Securities Insurance**

a. **Inside The Premises**

(1) We will pay for loss of **money** and **securities** inside your **premises** or **banking premises** resulting directly from **theft**, disappearance or destruction.

(2) We will pay for loss of or damage to, a locked safe, vault, cash register, cash box or cash drawer located inside your **premises** resulting directly from an actual or attempted **theft** of or unlawful entry into those containers.

(3) We will pay for loss from damage to your **premises** or its exterior resulting directly from an actual or attempted **theft** of **money** and **securities** if you are the owner of the **premises** or are liable for damage to it.

b. **Outside The Premises**

We will pay for loss of **money** and **securities** outside your **premises** in the care and custody of a **messenger** or an armored motor vehicle company resulting directly from **theft**, disappearance or destruction.

But, we will pay only for the amount of loss that you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

## B. EXCLUSIONS

1. This insurance does not apply to:

a. **Acts of Employees, Managers, Directors, Trustees Or Representatives**

Except when covered under Coverage Agreement A.1., **Employee Theft**, loss resulting from **theft** or any other dishonest act committed by any of your **employees**, managers, directors,

trustees or authorized representatives whether acting alone or in collusion with other persons.

b. **Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

c. **Indirect Loss**

Loss that is an indirect or consequential result of any act or **occurrence** covered by this insurance including, but not limited to, loss resulting from your inability to realize income that you would have realized had there been no loss, and your legal liability to others, and expenses you incur in establishing either the existence or the amount of loss.

However, this exclusion does not eliminate **Employee Theft** Insurance applicable to the property of others.

d. **Legal Expenses**

Expenses related to any legal action, except when covered under Coverage Agreement A.2., **Forgery** or Alteration.

e. **Nuclear**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination or any related act or incident.

f. **War and Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

2. Further, Coverage Agreement A.1., **Employee Theft** Insurance, does not apply to:

a. **Employee Cancelled Under Prior Insurance**

Loss caused by any **employee** of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

b. **Inventory Shortage**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon an inventory computation or a profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

c. **Trading**

Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

d. **Warehouse Receipts**

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Further, Coverage Agreement A.3., **Theft** of **Money** and **Securities** Insurance, does not apply to:

a. **Accounting or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

b. **Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

c. **Fire**

Loss resulting from fire, however caused, except:

(1) Loss from damage to a safe or vault; and

(2) Loss of or damage to **money** and **securities**.

d. **Money Operated Devices**

Loss of property contained in any **money** operated device unless the amount of **money** in it is recorded by a continuous recording instrument in the device.

e. **Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

f. **Transfer or Surrender of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the **premises** or **banking premises**:

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person; or

(c) As a result of a threat to do damage to any property.

(2) But, this Exclusion 3.f. does not apply under Coverage Agreement 3.b. **Theft** of **Money** and **Securities** Outside The **Premises**, to loss of **money**, **securities** or **other property** while outside the **premises** in the care and custody of a **messenger** if you:

(a) Had no knowledge of any threat at the time the conveyance began; or

(b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

g. **Vandalism**

Loss from damage to the **premises** or its exterior, or to any safe, vault, cash register, cash box, cash drawer or **other property** by vandalism or malicious mischief.

h. **Voluntary Parting of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

## C. LIMITS OF COVERAGE

1. **Per Occurrence**
The most we will pay for loss in any one **occurrence** is the applicable per **occurrence** limit shown in the Crime Declarations.

2. **Policy Year Aggregate**

The Policy Year Annual Aggregate limit shown in the Crime Declarations is the most we will pay in any one Policy Year under this Section G.

3. **Special Limit, Specified Property Under Insuring Agreement A.3. Theft Of Money And Securities, b. Outside The Premises**

We will only pay up to $5,000 for any one **occurrence** of loss or damage to:

a. Precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

b. Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

## D. DEDUCTIBLE

1. We will not pay for loss in any one **occurrence** unless the amount of loss exceeds the applicable Deductible Amount shown in the Crime Declarations. We will then pay the amount of loss in excess of the applicable Deductible Amount, up to the applicable Limit of Coverage.
2. You must give us notice as soon as possible of any loss of the type covered hereunder even though it falls entirely within the Deductible Amount.
3. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.
4. The Deductible Amount does not apply to legal expenses paid under Coverage Agreement A.2. **Forgery** or Alteration, subparagraph b.

## E. DEFINITIONS

1. **Banking Premises** means the interior of that portion of any building occupied by a banking institution or similar safe depository.
2. **Client** means any entity for which you perform services under a written agreement.
3. **Custodian** means you, or any of your partners or members, or any **employee** while having care and custody of property inside the **premises**, excluding any person while acting as a **watchperson** or janitor.
4. **Employee**:

   a. **Employee** means:

      (1) Any natural person:

         (a) While in your service or for 60 days after termination of service;
         (b) Whom you compensate directly by salary, wages or commissions; and
         (c) Whom you have the right to direct and control while performing services for you;

      (2) Any natural person who is furnished temporarily to you:

         (a) To substitute for a permanent **employee** as defined in Paragraph a.(1) of this Definition 4, **Employee**, above, who is on leave, or;
         (b) To meet seasonal or short-term work load conditions;

      while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the **premises**; or

      (3) Any natural person who is:

         (a) A trustee, officer, **employee**, administrator or manager, except an administrator or manager who is an independent contractor, of any **employee benefit plan(s)** insured under this insurance; and
         (b) Your director or trustee while that person is handling **funds** or **other property** of any **employee benefit plan(s)** insured under this insurance.

   b. **Employee** does not mean:

      (1) Any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee independent contractor or representative of the same general character; or
      (2) Any manager, director or trustee except while performing acts coming within the scope of the usual duties of an **employee**.

5. **Employee Benefit Plan(s)** means any welfare or pension benefit plan shown in the Crime Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).
6. **Forgery** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature that consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.
7. **Funds** means **money** and **securities**.
8. **Messenger** means you, or a relative of yours, or any of your partners, or members, or any **employee** while having care and custody of property outside the **premises**.
9. **Money** means:

   a. Currency, coins and bank notes in current use and having a face value; and
   b. Travelers checks, register checks and **money** orders held for sale to the public.

10. **Occurrence** means:

    a. As respects Coverage Agreement A.1., Employee Theft Insurance, all loss caused by, or involving, one or more **employees**, whether the result of a single act or series of acts.
    b. As respects Coverage Agreement A.2., Forgery or Alteration Insurance, all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.
    c. As respects Coverage Agreement A.3., Theft of Money and Securities Insurance:

(1) An act or series of related acts involving one or more persons; or

(2) An act or event, or a series of related acts or events not involving any person.

11. **Other Property** means any tangible property other than **money** and **securities** that has intrinsic value but does not include any property excluded under this insurance.

12. **Premises** means the interior of that portion of any building you occupy in conducting your business.

13. **Securities** means negotiable and non-negotiable instruments or contracts representing either **money** or property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include **money**.

14. **Theft** means the unlawful taking of **money**, **securities** or **other property** to the deprivation of the Insured.

15. **Watchperson** means any person you retain specifically to have care and custody of property inside the **premises** and who has no other duties.

## F. CONDITIONS

The following Conditions apply in addition to Section A., General Conditions Applicable To This Entire Policy:

1. **Cancellation As to Any Employee**

   This insurance is cancelled as to any **employee**:

   (1) Immediately upon discovery by:
       (a) You; or
       (b) Any of your partners, members, managers, officers, directors or trustees not in collusion with the **employee**;

       Of **theft** or any other dishonest act committed by that **employee** whether before or after becoming employed by you.

   (2) On the date specified in a notice mailed to the first Named Insured shown in the Policy Declarations. That date will be at least 30 days after the date of mailing.

       We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. **Concealment, Misrepresentation Or Fraud**

   This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

   (1) This insurance;

   (2) The property covered under this insurance;

   (3) Your interest in the property covered under this insurance; or

   (4) A claim under this insurance.

3. **Discovery**

   a. We will pay for loss that you sustain through acts committed or events occurring at any time and discovered by you:

      (1) During the Term of Coverage shown in the Policy Declarations; or

      (2) During the period of time provided in Paragraph 4. Extended Period To Discover Loss Condition below.

   b. Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this insurance has been or will be incurred, even though the exact amount or details of loss may not then be known.

      Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this insurance.

4. **Extended Period To Discover Loss**

   a. We will pay for loss that you sustain prior to the effective date of termination or cancellation of this insurance, which is discovered by you no later than one year from the date of that termination or cancellation.

   b. However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

5. **Duties In The Event Of Loss**

After you discover a loss or a situation that may result in loss of or damage to **money**, **securities** or **other property** you must:

a.  Notify us as soon as possible. If you have reason to believe that any loss involves a violation of law, you must also notify the local law enforcement authorities.

b.  Submit to examination under oath at our request and give us a signed statement of your answers.

c.  Give us a detailed, sworn proof of loss within 120 days.

d.  Cooperate with us in the investigation and settlement of any claim.

6.  **Employee Benefit Plan(s)**

a.  The **employee benefit plan(s)** shown in the Crime Declarations are included as insureds under Insuring Agreement A.1., Employee Theft.

b.  If any **employee benefit plan(s)** is insured jointly with any other entity under this insurance, you must select a Limit of Coverage for Insuring Agreement A.1., Employee Theft that is sufficient to provide a Limit of Coverage for each **employee benefit plan** that is at least equal to that required if each **employee benefit plan** were separately insured.

c.  With respect to losses sustained or discovered by any such **employee benefit plan**, Insuring Agreement A.1., Employee Theft, is replaced by the following:

We will pay for loss of or damage to **funds** and **other property** resulting directly from fraudulent or dishonest acts committed by an **employee**, whether identified or not, acting alone or in collusion with other persons.

d.  If the first Named Insured shown in the Policy Declarations is an entity other than an **employee benefit plan**, any payment we make to that first Named Insured for loss sustained by any **employee benefit plan** will be held by the first Named Insured for the use and benefit of the **employee benefit plan(s)** sustaining the loss.

e.  If two or more **employee benefit plan(s)** are insured under this insurance, any payment we make for loss:

(1)  Sustained by two or more **employee benefit plan(s)**; or

(2)  Of commingled **funds** or **other property** of two or more **employee benefit plan(s)**;

that arises out of one **occurrence**, is to be shared by each **employee benefit plan** sustaining loss in the proportion that the Limit of Coverage required for each **employee benefit plan** bears to the total of those limits.

f.  The Deductible Amount applicable to Insuring Agreement A.1., Employee Theft, does not apply to loss sustained by any **employee benefit plan(s)**.

7.  **Extended Period To Discover Loss**

a.  We will pay for loss that you sustain prior to the effective date of termination or cancellation of this insurance, which is discovered by you no later than one year from the date of that termination or cancellation.

b.  However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

8.  **Joint Insured**

a.  If more than one insured is named in the Policy Declarations, the first Named Insured will act for itself and for every other insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

b.  If any insured, or partner, member or officer of that insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every insured.

c.  An **employee** of any insured is considered to be an **employee** of every insured.

d.  If this insurance or any of its coverages is cancelled or terminated as to any insured, loss sustained by that insured is covered only if discovered by you during the period of time in the Extended Period To Discover Loss Condition F.1.g.

However, this extended period to discover loss terminates as to that insured immediately upon the effective date of any other insurance obtained by that insured replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

e.  We will not pay more for loss sustained by more than one insured than the amount we would pay if all the loss had been sustained by one insured.

9.  **Legal Action Against Us**

Section A., General Conditions Applicable to This Entire Policy, Condition H., Legal Action Against Us does not apply.  You may not bring any legal action against us involving loss:

a.  Until all the terms of this Section G. have been complied with;

b.  Until 90 days after you have filed proof of loss with us; and

c.  Unless brought within 2 years from the date you discover the loss.

The 2 year period for legal action against us is extended by the number of days between the date the statement of loss is filed with us and the date we deny the claim in whole or in part.

If any limitation in this Condition F.1.j. is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

10. **Loss Covered Under this Coverage and Prior Coverage Issued by Us or Any Affiliate**

If any loss is covered:

a.  Partly by this coverage; and

b.  Partly by any prior cancelled or terminated coverage that we or an affiliate of ours had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this coverage or the prior coverage.

11. **Loss Covered Under More Than One Coverage Of This Insurance**

If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

a.  The actual amount of loss; or

b.  The sum of the Limits of Coverage applicable to those coverages.

12. **Non-Cumulation of Limits of Coverage**

Regardless of the number of years this coverage remains in force or the number of premiums paid, the Limit of Coverage does not accumulate from year to year or period to period.

13. **Other Insurance**

Section A. General Conditions Applicable To This Entire Policy, I. Other Insurance, does not apply.  There may be other insurance applying to losses covered under this Section.  If so, this insurance shall apply in excess of all other coverage.  We will pay only for the amount of covered loss or damage in excess of the amount due from that other coverage, whether you can collect on it or not.  But we will not pay more than the applicable Limit of Coverage.

14. **Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

a.  That you own or lease;

b.  That you own or hold; or

c.  For which you are legally liable, except for property inside the **premises** of a **client** of yours.

However, this insurance is for your benefit only.  It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

15. **Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

16. **Recoveries**

(1) Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(a) To you, until you sustain that exceeds the Limit of Coverage and the Deductible Amount, if any;

(b) Then to us, until we are reimbursed for the settlement made; and

(c) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original **securities** after duplicates of them have been issued.

17. **Coverage Under Two or More Coverage Parts**

If two or more of this policy's coverages apply to the same loss, we will not pay more than the actual amount of the loss or damage subject to the highest available limit under any one applicable coverage.

18. **Valuation-Settlement**

(1) Subject to the applicable Limit of Coverage we will pay for:

(a) Loss of **money** but only up to and including its face value.  We may, at our option, pay for loss of **money** issued by any country other than the United States of America:

(i) At face value in the **money** issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

(b) Loss of **securities** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(i) Pay the value of such **securities** or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **securities**; or

(ii) Pay the cost of any Lost **Securities** Bond required in connection with issuing duplicates of the **securities**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(x) Value of the **securities** at the close of business on the day the loss was discovered; or

(y) Limit of Coverage.

(c) Loss of, or loss from damage to **other property** or loss from damage to the **premises** or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i) The Limit of Coverage applicable to the lost or damaged property;

(ii) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

(iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

We will not pay on a replacement cost basis for any loss or damage:

(iv) Until the lost or damaged property is actually repaired or replaced; and

(v) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We may, at our option, pay for loss of or damage to property other than **money**:

(a) In the **money** of the country in which the loss occurred; or

(b) In the United States of America dollar equivalent of the **money** of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

(3) Any property that we pay for or replace becomes our property.

19. **Coverage Territory**

Condition E., Coverage Territory, of Section A., General Conditions Applicable To This Entire Policy does not apply. We will cover loss you sustain anywhere in the world.

# SECTION H

# TERMS & CONDITIONS APPLICABLE TO PRIMARY LIABILITY INSURANCE

If any of the following types of insurance are provided under this policy:

| | | |
|---|---|---|
| Section I | . | **Bodily injury** and **Property Damage** Liability |
| Section J. | | **Sexual abuse** Liability |
| Section K. | | **Social work**, Foster Care and Counseling Liability |
| Section L. | | Medical Liability |
| Section M. | | **Personal and advertising injury** Liability |
| Section N. | | **Nonowned** and **Hired Auto** Liability |
| Section O. | | Medical Payments |
| Section P. | | **Employee Benefit Administration** Liability, |

Then the following Terms & Conditions apply to them.

## A. LIMITS OF COVERAGE

1. The Limits of Coverage shown in the Primary Liability Declarations of this policy and the rules below fix the most we will pay regardless of the number of:

    a. **Insureds** and additional **insured**s;

    b. Claims made or **suit**s brought;

    c. Persons or organizations making claims or bringing **suit**s;

    d. **Nonowned autos**, **hired autos**, or vehicles involved in an **accident** under Section N.;

    e. Premiums paid; or

    f. Acts, errors or omissions resulting in loss or **employee benefit plans** under Section P.

2. **Single Limit**

    a. Within this policy no more than one Section shall apply to one or more complaints, demands, claims or **suits** arising out of any single **occurrence**, **medical incident**, **personal and advertising injury** offense, **sexual abuse occurrence**, **social work occurrence**, or **employee benefit administration**, or a combination thereof.

    b. If more than one policy issued by us applies to one or more complaints, demands, claims or **suits** arising out of a single **occurrence**, **medical incident**, **personal and advertising injury** offense, **sexual abuse occurrence**, **social work occurrence**, or **employee benefit administration**, or a combination thereof, then the largest applicable Limit of Coverage available under any single policy shall apply to all **insureds** with respect to any such **occurrence**, **medical incident**, **personal and advertising injury** offense, **sexual abuse occurrence**, **social work occurrence**, or **employee benefit administration**.

    c. Any **damages** incurred because of **sexual abuse**, **social work injury**, or **medical/ healthcare services**, including a series or combination of related **sexual abuse occurrences** or **social work occurrences** or **medical incidents**, to any one person or family, including a **foster care family**, occurring over more than one Policy Year, shall be considered incurred because of a single **sexual abuse occurrence** or **social work occurrence** or **medical incident** and will be subject to the Limits of Coverage in effect at the time of the first **sexual abuse occurrence** or **social work occurrence** or **medical incident**.

1. **Policy Year Annual Aggregate Limit – Sections I., J., K., and L.**

    The Policy Year Annual Aggregate Limit for Sections I., J., K. and L., indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** under Sections I., J., K., and L. during each Policy Year.

4. This Policy Year Annual Aggregate Limit applies separately to each Policy Year of this policy.

## B. COMMON EXCLUSIONS

Except as expressly provided in a specific Section, insurance provided under all Primary Liability coverages provided by this policy does not apply to:

1. **Expected or Intended Injury**

    **Bodily injury** or **property damage** which are expected or intended from the standpoint of the **insured**.

    However, this exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property, or corporal punishment to any of your students, pupils or **clients** administered by any **insured** provided that you authorized it.

2. **Contractual Liability**
    Liability of others assumed by any **insured** under any contract or agreement, other than an **insured contract**.

This includes liability assumed by the **insured** under any agreement guaranteeing the results of any counseling and liability arising from guaranteeing the results of treatment by the **insured**.

3. **Liquor Liability**

**Bodily injury** that any **insured** who is regularly engaged in the business activity of manufacturing, distributing, selling, serving or furnishing alcoholic beverages in order to generate income in excess of expenses, may be held liable by reason of:

a. Causing or contributing to the intoxication of any person;

b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

a. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

4. **Workers' Compensation and Similar Laws**

Any obligation of the **insured** under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

5. **Employment-Related Practices**

Any **bodily injury**:

a. To a person arising out of any:

    i. Refusal to employ that person;

    ii. Termination of that person's employment; or

    iii. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. To the spouse, child, parent, brother or sister of that person as a consequence of any **damages** to that person at whom any of the employment-related practices described above is directed.

c. Arising from consequential **bodily injury** or **personal and advertising injury** of any physical or psychological origin resulting from subparagraphs a. or b. above.

This exclusion applies whether the **insured** may be held liable as an employer or in any other capacity; and to any obligation to share **damages** with or to repay someone else who must pay **damages** because of the injury.

6. **Employer's Liability**

Any **bodily injury** to:

a. An **employee** of the **insured** arising out of and in the course of employment by the **insured** or performing

duties related to the conduct of the **insured's** business; or

a. The spouse, child, parent, brother or sister of that **employee** as a consequence of a. above.

This exclusion applies:

(1) Whether the **insured** may be liable as an employer or in any other capacity; and

(2) To any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.

However, this exclusion does not apply to liability assumed by the **insured** under an **insured contract**.

7. **Pollution**

a. Any **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

    i. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**. However, this subparagraph does not apply to:

        a) **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

        b) **Bodily injury** or **property damage** for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **insured** with respect to your ongoing operations performed for that additional **insured** at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **insured**, other than that additional **insured**; or

        c) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire;

    ii. At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of **waste**;

    iii. Which are or were at any time transported, handled, stored, treated, disposed of or processed as **waste** by or for any **insured** or any person or

organization for whom you may be legally responsible;

iv. At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor. However, this subparagraph does not apply to:

   a) **Bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such **insured**, contractor or subcontractor;

   b) **Bodily injury** or **property damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   c) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire.

v. At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

b. Any loss, cost or expense arising out of any:

i. Request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

ii. Claim or **suit** by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, this paragraph does not apply to liability for **damages** because of **property damage** that the **insured** would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **suit** by or on behalf of a governmental authority.

8. **Aircraft, Auto, or Watercraft**

Any **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any **insured**. Use includes operation and **loading or unloading**.

This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**.

This exclusion does not apply to **bodily injury** or **property damage** arising out of:

a. Any watercraft while ashore on premises you own or rent;

b. A watercraft that is less than 26 feet long and is not being used to carry persons or property for a charge;

c. Parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you.

9. **Mobile Equipment**

**Bodily injury** or **property damage** arising out of:

a. The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured**; or

b. The use of **mobile equipment** in, or while in practice for, or while being prepared for, any prearranged racing, speed or demolition contest or stunting activity.

10. **War**

**Bodily injury** or **property damage**, however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or

other authority using military personnel or other agents; or

c.  Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

11. **Professional Services**

Any **damages** arising out of the rendering or failure to render professional services, including, but not limited to healthcare and veterinary services, **social work**, **foster care services**, psychological counseling, psychological therapy, psychological evaluation for program placement, legal, accounting, financial, appraisal, architectural, cosmetic, physical therapy, massage, optical, optometric, ear piercing and engineering services.

12. **Damage to Property**

**Property damage** to:

a.  Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

b.  Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

c.  Property loaned to you;

d.  Personal property in your care, custody or control;

e.  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations; or

f.  That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

13. **Damage to your Product or Work**
**Property damage** to your product or your work.

14. **Damage to Impaired Property or Property Not Physically Injured**

**Property damage** to impaired property or property that has not been physically injured, arising out of:

i.  A defect, deficiency, inadequacy or dangerous condition in your product or your work; or

ii.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

15. **Recall of Products, Work or Impaired Property**

**Damages** claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.  Your product;

b.  Your work; or

c.  Impaired property;

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

16. **Sexual Abuse**

Any **bodily injury** arising out of any actual, threatened, intentional or unintentional **sexual abuse** of any person.

17. **Nuclear Energy Liability**

a.  **Bodily injury** or **property damage** with respect to which an **insured** under this insurance is also an **insured** under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such insurance policy but for its termination upon exhaustion of its limit of liability; or

b.  **Damages** resulting from the **hazardous properties** of **nuclear material** and with respect to which:

i.  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

ii.  The **insured** is, or had this insurance not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

c.  **Damages** resulting from the **hazardous properties** of **nuclear material**, if:

i.  The **nuclear material**:

(a) Is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or

(b) Has been discharged or dispersed therefrom;

ii.  The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled,

used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

iii. The **damages** arise out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (iii) applies only to **property damage** to such **nuclear facility** and any property thereat.

18. **Personal and Advertising Injury**

    **Damages** arising out of **personal and advertising injury**.

19. **Employee Benefit Administration & Fiduciary Liability**

    **Damages** arising out of **employee benefit administration** and the legal liability of fiduciaries under the Employee Retirement Income Security Act (ERISA), including its amendments, and similar state and local statutes.

20. **Hazardous Activities**

    Any **damages** arising directly or indirectly out of the activities, events or causes of injury or damage listed below when authorized and conducted by the Named **Insured** or authorized by the Named **Insured** and conducted on its behalf by **employees**, volunteers, or independent contractors of the Named **Insured**.

    Excluded activities, events or causes of injury are:

    a. Tackle football activities;

    b. The use of any size trampoline, including half-tramp equipment;

    c. Detonation or ignition of fireworks displays except by licensed independent contractors that provide to the Named **Insured** evidence of applicable liability insurance coverage demonstrating a limit of not less than $1,000,000 per **occurrence**;

    This is an absolute exclusion. We have no obligation to defend, pay on behalf of, indemnify or incur any cost or expense for any **insured** or any other person or organization seeking coverage under this insurance for any activities, events, or causes of injury described above.

21. **Accreditation and Professional Boards**

    **Damages** arising out of participation in a formal accreditation or similar professional board or committee.

22. **Electronic Data**

**Damages** arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

23. **Lead Poisoning and Contamination**

    Any **bodily injury** arising out of the ingestion, inhalation or absorption of lead in any form, including any loss, cost or expense arising out of any request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead and any loss cost or expense arising out of any claim or **suit** by or on behalf of a governmental authority for **damages** because of any examination, testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the presence or the effects of lead.

24. **Asbestos**

    **Bodily injury**, **property damage**, or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to by asbestos, exposure to asbestos or the use of asbestos including:

    a. Any damages or any loss, cost or expense arising out of any (i) claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or (ii) request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

       1. Assessing the presence, absence or amount or effects of asbestos;

       2. Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating asbestos; or

       3. Responding to asbestos in any way other than as described in 1. and 2. above;

    b. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

    c. Any obligation to share damages with or repay someone else in connection with any of the subsections above.

## C. COMMON SUPPLEMENTARY PAYMENTS CONDITIONS

Except as expressly provided in a specific Section, the following Supplementary Payments Conditions apply to all Primary Liability Sections.

1. We will pay, with respect to any claim or any **suit** we defend:

    a. All expenses we incur.

    b. The cost of bail bonds required because of **accidents** or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies. We do not have to furnish these bonds.

    c. The cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Coverage. We do not have to furnish these bonds.

    d. All reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $200 a day because of time off work.

    e. All costs taxed against the **insured** in the **suit**.

    f. Pre-judgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limits of Coverage, we will not pay any pre-judgment interest based on that period of time after the offer.

    g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Coverage.

    These payments will not reduce the Limits of Coverage.

2. If we defend an **insured** against a **suit** and an indemnitee of the **insured** is also named as a party to the **suit**, we will defend that indemnitee if all of the following conditions are met:

    a. The **suit** against the indemnitee seeks **damages** for which the **insured** has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract**;

    b. This insurance applies to such liability assumed by the **insured**;

    c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the **insured** in the same **insured contract**;

    d. The allegations in the **suit** and the information we know about the **occurrence** are such that no conflict appears to exist between the interests of the **insured** and the interests of the indemnitee;

    e. The indemnitee and the **insured** ask us to conduct and control the defense of that indemnitee against such **suit** and agree that we can assign the same counsel to defend the **insured** and the indemnitee; and

    f. The indemnitee:

        i. Agrees in writing to:

            (a) Cooperate with us in the investigation, settlement or defense of the **suit**;

            (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **suit;**

            (c) Notify any other insurer whose coverage is available to the indemnitee; and

            (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        ii. Provides us with written authorization to:

            (a) Obtain records and other information related to the **suit**; and

            (b) Conduct and control the defense of the indemnitee in such **suit**.

    g. So long as the conditions of this provision C.2. are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of B. Exclusions, 2. above, such payments will not be deemed to be **damages** for **bodily injury** and **property damage** and will not reduce the Limits of Coverage.

    h. Our obligation to defend an **insured's** indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when:

        i. We have used up the applicable Limits of Coverage in the payment of judgments or settlements; or

        ii. The conditions set forth in this paragraph C.2, or the terms of the agreement described in subparagraph f. of this paragraph C.2. are no longer met.

## D. COMMON DEFINITIONS

Except as expressly provided in a specific Section, the following Definitions apply to all Primary Liability Sections.

1. **Accident** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage**.

2. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purposes of attracting customers or supporters. For purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an **advertisement**.

3. **Auto** means:

   a. a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   But **auto** does not include **mobile equipment**.

4. **Bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. **Client** means your recipient of **social work**, including **foster care services** and personal counseling services.

6. **Damages** means any monetary compensatory amount that an **insured** is legally obligated to pay, including judgments, awards and settlements entered into with our prior written consent. **Damages** shall not include, by way of description or limitation, any form of equitable relief, cost associated with complying with injunctions or temporary restraining orders, or any fines, penalties, remedial or punitive **damages**.

   **Damages** includes all **damages** claimed by any person or organization for care, loss of services or death of another person.

7. **Employee** does not include:

   a. temporaries furnished to you to substitute for permanent **employee(s)** on leave or to meet seasonal demands or short-term workload conditions; or

   b. volunteers who donate work and acts at the direction of and within the scope of duties determined by you,

and are not paid a fee, salary or other compensation by you or anyone else for their work performed for you; or

   c. persons leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your organization's activities; or

   d. independent contractors.

8. **Employee Benefit Administration** means:

   a. Giving counsel to **employees**, including their dependents and beneficiaries, with respect to the **employee benefit plans**;

   b. Interpreting the **employee benefit plans**;

   c. Handling records in connection with the **employee benefit plans**; or

   d. Effecting enrollment, termination or cancellation of **employees** under the **employee benefit plans**;

   provided you authorized all such acts.

   **Employee Benefit Administration** does not include **employee benefit plan** governance, management, oversight, investment decisions and investment outcome.

9. **Employee benefit plans** means group life insurance, group **accident** or health insurance, pension plans, **employee** stock subscription plans, workers' compensation, unemployment insurance, social security, disability benefits and any other similar **employee benefit plan**.

10. **Foster care family** means all persons whose usual place of residence is the same dwelling as the **foster children**.

11. **Foster care services** means the provision of personal care and training to **foster children** including the activities of the **insured** in the investigation, evaluation, counseling, treatment, training, material aid, supervision and monitoring of individuals or families, including **foster care families**, with respect to placement of **foster children**.

12. **Foster children** means natural persons under the age of 21 years who have been placed in the care and custody of a **foster care family**.

13. **Hired auto** means only those **autos** you lease, hire, rent or borrow. This does not include any **auto** you lease, hire, rent or borrow from any of your **employees**, temporaries, volunteers, leased workers or independent contractors or members of their households.

14. **Insured** means you and all of your executive officers and directors, trustees, but only while acting within the scope of their duties as such.

   **Insured** also includes:

a.   Your **employees** for acts within the scope of their employment by you.  However, no **employee** is an **insured** for:

   i.   **Damages** to you or to a fellow **employee** while in the course of their employment, or the spouse, child, parent, brother or sister of that fellow **employee** as a consequence of such injury, or for any obligation to share **damages** with someone else who must pay **damages** because of the injury.

   ii.   **Property damage** to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, or any of your **employees** or volunteers.

b.   Any organization (other than a joint venture, limited liability company, or a partnership) newly acquired or formed by you, and in which you have a majority interest.

   However, such an organization is not an **insured**:

   i.   If there is other similar coverage available to it;

   ii.   After 90 days immediately following that acquisition or formation or upon expiration or cancellation of the policy, whichever is earlier;

   iii.   For **damages** that occurred or were committed prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Policy Declarations as an **insured**.

c.   **Insured** does not include a **foster care family**.

d.   Any additional Named **Insured** or additional **insured** designated in the Declarations is covered but solely for **damages** that an **insured** as defined above, is also liable.  This insurance does not apply to any other liability of the additional Named **Insured** or additional **insured** and this inclusion does not increase the applicable Limit of Coverage. **Employees**, agents, representatives and volunteers of an additional Named **Insured** or additional **insured** are not **insureds** under this policy.

e.   Your volunteers but only while acting at your direction and within the scope of their duties.  No volunteer is an **insured** for:

   i.   **Damages** to you or to a co-volunteer or to your **employees** arising out of and in the course of their duties.

   ii.   **Property damage** to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, a co-volunteer or your **employees**.

   iii.   **Damages** arising out of his or her providing or failing to provide professional health care services.

f.   Your members, but only with respect to their liability arising from your activities or activities they perform on your behalf.

g.   Your trustees, officials, members of the board of governors, clergymen or deacons but only with respect to their duties as such.

h.   Anyone, except your **employees**, while acting as your real estate manager;

i.   With respect to **mobile equipment** registered in your name under any motor vehicle registration law, any person while operating such equipment along a public highway with your permission is an **insured**. Any other person or organization responsible for the conduct of such person is also an **insured**, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization. However, no person or organization is an **insured** with respect to:

   **Bodily injury** to a fellow **employee** of the person driving the equipment; or

   **Property damage** to property owned by, rented to, in the charge of, or occupied by you or the employer of any person who is an **insured** under this subparagraph.

15.   **Insured contract** means:

a.   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

b.   A sidetrack agreement;

c.   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.   An elevator maintenance agreement;

e.   A contract or agreement pertaining to your organization under which you assume the tort liability of another party to pay for **bodily injury** or **property damage**, **sexual abuse, social work injury** or **damages** arising out of a **medical incident** to a third person or organization, except as specifically

excluded in paragraph f. below. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

f. **Insured contract** does not include that part of any contract or agreement:

    i. That defends or indemnifies any person or organization for **damages** arising out of **bodily injury**, **property damage**, **sexual abuse, social work injury** or a **medical incident** which occurred prior to the execution of the contract or agreement

    ii. That defends or indemnifies any person, organization or entity for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

    iii. That defends or indemnifies an architect, engineer or surveyor for loss arising from:

        (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, or drawings or specifications; or

        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

    iv. That defends or indemnifies for loss arising from any person, organization or entity for any construction, remodeling or repair services.

    v. That defends or indemnifies any person, organization or entity for **bodily injury** and **property damage** arising out of the ownership, maintenance, use or entrustment of any aircraft, **auto** or watercraft.

16. **Loading or unloading** means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

b. While it is in or on an aircraft, watercraft or **auto**; or

c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

but **loading and unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

17. **Medical incident** means continuous or repeated exposure to substantially the same conditions, including related medical/healthcare services, resulting in **medical/healthcare injury**.

18. **Medical/healthcare injury** means any injury arising out of any act, error or omission of an **insured** within the scope of that **insured's** employment by or services to you arising out of the furnishing of medical/healthcare services.

19. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    i. Power cranes, shovels, loaders, diggers drills; or

    ii. Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    i. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    ii. Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

    i. Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    ii. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

    iii. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **mobile equipment** does not include any land vehicles that are subject to a compulsory or financial

responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

20. **Nonowned auto** means only those **autos** you do not own, lease, hire, rent or borrow that are used in connection with the conduct of your organization's activities. This includes **autos** owned by **employees** but only while used in the conduct of your organization's activities.

21. **Nuclear Energy Liability Definitions**

The following definitions apply only to the Nuclear Energy Liability Exclusion in Section B., common Exclusions, above:

a. **Hazardous properties** include radioactive, toxic or explosive properties.

b. **Nuclear material** means **source material**, **special nuclear material** or **by-product material**.

c. **Source material, special nuclear material** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

d. **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

e. **Waste** means any **waste** material:

i. Containing **by-product material** other than the tailings or **wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

ii. Resulting from the operation by any person or organization of any **nuclear facility** included under subparagraphs i. and ii. of the definition of **nuclear facility**.

f. **Nuclear facility** means:

i. Any **nuclear reactor**.

ii. Any equipment or device designed or used for:

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing **spent fuel**; or

(c) Handling, processing or packaging **waste**.

iii. Any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any

combination thereof, or more than 250 grams of uranium 235.

iv. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

g. **Nuclear reactor** means any apparatus designed or used:

i. To sustain nuclear fission in a self-supporting chain reaction; or

ii. To contain a critical mass of fissionable material.

h. For purposes of Exclusion 18., Nuclear Energy Liability, above, **property damage** includes all forms of radioactive contamination of property.

22. **Occurrence** means an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions.

23. **Personal and advertising injury** means injury including consequential **bodily injury** arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your **advertisement**; or

g. Infringing upon another's copyright, trade dress or slogan in your **advertisement**.

24. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**. **Waste** includes, by way of description and not limitation, materials disposed of or to be disposed of or materials to be recycled, reconditioned or reclaimed.

25. **Property damage** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of

use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

26. **Sexual abuse** means the infliction of harm of a sexual nature upon any person by another person or persons, including your **employees**, agents, representatives, volunteers, or others whether such harm is physical, emotional or psychological and is the result of physical, visual, or audible conduct.

27. **Sexual abuse occurrence** means the exposure of any one person to **sexual abuse** by one person or two or more persons acting together. All such exposure, including multiple interactions, occurring over any period of time shall be considered to have occurred at the time of the first exposure and during the Policy Year of the first such exposure.

28. **Social work** means activities of the Named **Insured** involving child welfare, community physical and mental health, adoption services, personal counseling services, and recreational activities.

29. **Social work injury** means acts, errors or omissions of the **insured**, arising out of the rendering or failure to render **social work** and **foster care services**. Acts, errors or omissions include but are not limited to the following allegations: duress, negligence, threats of removal of a child/children, and threats of administrative or criminal action.

30. **Social work occurrence** means continuous or repeated exposure to substantially the same harmful conditions resulting in **social work injury**, including all related **social work** and **foster care services**. All such exposure occurring over any period of time shall be considered to have occurred in the Policy Year of the first such exposure.

31. **Suit** means a civil proceeding in which **damages** to which this insurance applies are alleged. **Suit** includes:

a. An arbitration proceeding in which such **damages** are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such **damages** are claimed and to which you must submit or do submit with our consent.

## E. COMMON COVERAGE CONDITIONS

Except as expressly provided in a specific Section, the following Common Coverage Conditions apply to all Primary Liability Sections in addition to the General Conditions Applicable To This Entire Policy.

1. **Duties in the Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified as soon as practicable of any **accident**, event or change in condition that may result in a claim. To the extent possible, notice should include:

i. How, when and where the **accident**, event or change in condition took place;

ii. The names and addresses of any injured persons and witnesses; and

iii. The nature and location of any injury or damage.

b. If a claim is made or **suit** is brought against any **insured**, you must:

i. Immediately record the specifics of the claim or **suit** and the date received; and

ii. Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

c. You and any other involved **insured** must:

i. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

ii. Authorize us to obtain records and other information;

iii. Cooperate with us in the investigation, settlement or defense of the claim, or **suit**; and

iv. Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **insured** because of injury or damage to which this insurance may also apply.

d. No **insured** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e. You must see to it that notice of any **accident**, event or change in condition that may result in a claim, or a claim which has been made or a **suit** is given as soon as practicable to any other insurer which has available insurance for a loss which we cover under this insurance.

f. You must promptly tender the defense of any claim or claim made or **suit** to any other insurer that also has available insurance for a loss that we cover under this insurance.

2. **Separation of Insureds**

Except with respect to the Limits of Coverage, and any rights or duties specifically assigned in this insurance to the first Named **Insured** shown in the Policy Declarations, this insurance applies:

a. As if each **insured** were the only **insured**; and

b.   Separately to each **insured** against whom claim is     made or **suit** is brought.

# SECTION I
# BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section I. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENT

We will pay those sums that the **insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must occur during the term of coverage and must be caused by an **occurrence** that takes place in the Coverage Territory.

Also:

1.   We will have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance applies.  We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, claim proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage afforded, except at our sole discretion.

2.   The amount we will pay for **damages** is limited as described in the Primary Liability Declarations and paragraph C., Limits of Coverage Conditions, of this Section.

3.   We may investigate and settle any claim or **suit** at our discretion.

4.   Our right and duty to defend ends when we have paid the applicable Limits of Coverage.

5.   If this insurance does not apply, we have no duty to defend.

6.   We will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

7.   This insurance applies only if, prior to the Term of Coverage, neither you, any of your executive officers and directors while acting within the scope of their duties, nor any **employee** authorized to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or

**property damage** had occurred, in whole or in part.  If you, any of your executive officers and directors while acting within the scope of their duties, or any authorized **employee** knew, prior to the Term of Coverage, that the **bodily injury** or **property damage** occurred, then any continuation, change, or resumption of such **bodily injury** or **property damage** during or after the Term of Coverage will be deemed to have been known prior to the Term of Coverage.

8.   **Bodily injury** or **property damage** which occurs during the Term of Coverage and was not, prior to the Term of Coverage, known to have occurred by you, any of your executive officers and directors while acting within the scope of their duties, or any **employee** authorized by you to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the policy period.

9.   **Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when you, any of your executive officers and directors while acting within the scope of their duties, or any **employee** authorized by you to give or receive notice of an **occurrence** or claim:

a.   Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;

b.   Receives a written or verbal demand or claim for **damages** because of the **bodily injury** or **property damage**; or

c.   Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph C., Common Supplementary Payments Conditions of Section H.

## B. EXCLUSIONS

Except as expressly described below, this Section is subject to A. Common Exclusions, of Section H., Terms & Conditions Applicable To Primary Liability Insurance.

**Fire and Water Damage Legal Liability**

Subject to the Limit of Coverage provided in Section C.b. below, the otherwise applicable exclusions of this policy do

not apply to your legal liability for damage to premises, not owned by you, while rented to you or temporarily occupied by you with permission of the owner that is caused by fire, explosion, sudden smoke or smudge from the faulty operations of a heating or cooling unit, or water.

## C. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Conditions apply to Section I:.

a. The **Bodily injury** and **Property Damage** (Section I) Each **Occurrence** Limit indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** because of **bodily injury** and **property damage** arising out of any one **occurrence**.

b. $100,000 is the Fire and Water Damage Legal Liability Each **Occurrence** Limit and is the most we will pay for the sum of all **damages** because of damage to premises while rented to you or temporarily occupied by you with permission of the owner that is caused by fire, explosion, sudden smoke or smudge from the faulty operations of a heating or cooling unit, or water arising out of any one **occurrence**.

# SECTION J

# SEXUAL ABUSE LIABILITY

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section J. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENT

We will pay those sums that the **insured** becomes legally obligated to pay as **damages** arising out of **sexual abuse occurrences** to which this insurance applies. The **sexual abuse occurrence** must take place during the Term of Coverage and within the Coverage Territory.

Also:

1. We will have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance applies. We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, claim proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage afforded, except at our sole discretion.

2. The amount we will pay for **damages** is limited as described in the Primary Liability Declarations and paragraph C., Limits of Coverage Conditions of this Section.

3. We may investigate and settle any claim or **suit** at our discretion.

4. Our right and duty to defend ends when we have paid the applicable Limits of Coverage or otherwise exhausted the Policy Year Annual Aggregate Limit – Sections J., K., and L., shown in the Primary Liability Declarations.

5. If this insurance does not apply, we have no duty to defend.

6. We will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under C., Common Supplementary Payments Conditions of Section H.

## B. EXCLUSIONS

Except as expressly described below, this Section is subject to B. Common Exclusions, of Section H., Terms & Conditions Applicable To Primary Liability Insurance.

1. Exclusion 16., **Sexual Abuse** of Section H. does not apply.

2. The following additional Exclusions are added to this Section J.:

   With respect to any particular **insured**, this Section J. does not apply to:

   a. **Damages** arising from the perpetration of any criminal act by that **insured**.

   b. **Damages** sustained by an **employee** of an **insured**, or the spouse, child, parent, brother or sister of that **employee** with respect to **sexual abuse** of that **employee**.

      This exclusion applies whether the **insured** may be liable as an employer or in any other capacity; and also to any obligation to share **damages** with or repay someone else who must pay **damages**.

## C. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Conditions apply to Section J.:

1. Subject to Paragraph A. Limits of Coverage, 3. Policy Year Annual Aggregate Limit– Sections J., K., and L., of Section H., the **sexual abuse occurrence** Limit indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** arising out of a **sexual abuse occurrence**.

2. Any **damages** arising out of **sexual abuse** to any one person shall be considered incurred because of one **sexual abuse occurrence**.

3. Any **damages** arising out of **sexual abuse** to any one person occurring over any period of time shall be subject to the Limits of Coverage in effect at the time of the first **sexual abuse**.

## D. COVERAGE CONDITIONS

The following additional Coverage Condition applies to this Section J.:

**Knowledge of Actual or Alleged Sexual Abuse Occurrence**

Whenever any executive officer, supervisory **employee**, director or trustee of the **insured** shall have actual knowledge of any previous act, incident or alleged act or incident of **sexual abuse** by an **employee** or volunteer of the **insured**, then the coverage provided by Section J. shall be cancelled with respect to any subsequent **sexual abuse occurrence** involving, arising out of, resulting from or in any way related to **sexual abuse** on the part of that **employee** or volunteer of the **insured**.

# SECTION K
# SOCIAL WORK, FOSTER CARE AND COUNSELING LIABILITY

**This Section only applies if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section K. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENTS

1. **Insuring Agreement**

   We will pay those sums that the **insured** becomes legally obligated to pay as **damages** arising out of **social work occurrences** to which this insurance applies. The **social work occurrence** must take place during the Term of Coverage and within the Coverage Territory.

   a. We will have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance applies. We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, claim proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage afforded, except at our sole discretion.

   b. We may investigate and settle any claim or **suit** at our discretion.

   c. Our right and duty to defend ends when we have paid the applicable Limits of Coverage or otherwise exhausted the Policy Year Annual Aggregate Limit –

   Applicable to Sections J., K., and L., shown in the Primary Liability Declarations.

   d. We will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

   e. If this insurance does not apply, we have no duty to defend the **insured** under this Section.

   f. The amount we will pay for **damages** is limited as described in the Primary Liability Declarations and paragraph C., Limits of Coverage Conditions, of this Section.

2. **Supplementary Indemnification Agreement**

   When the provisions of Paragraph 1., Insuring Agreement, above, do not apply, we will indemnify the **insured** for expenses it incurs in the investigation, representation or defense of legal actions to which the **insured** arising out of **social work occurrences** arising out of adoption of a child or children which do not seek **damages**, but seek adjudicated non-pecuniary, specific performance regarding the custody and adoption status of a child or children. The **social work occurrence** must take place during the Term of Coverage and within the Coverage Territory.

   Our duty to indemnify ends when we have paid the applicable limit specified in Paragraph C. below.

3. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under C., Common Supplementary Payments Conditions of Section H.

## B. EXCLUSIONS

Except as expressly described below, this Section is subject to B. Common Exclusions, of Section H, Terms & Conditions Applicable to Primary Liability Insurance.

1. Exclusion 11., Professional Services, of Section H., is replaced by the following:

   Any **damages** arising out of the rendering or failure to render professional services, other than **social work**, foster care and counseling, including, but not limited to healthcare and veterinary services, legal, accounting, financial, appraisal, architectural, cosmetic, physical therapy, massage, optical, optometric, ear piercing and engineering services.

2. The following additional Exclusion is added to this Section K.:

   This Section K. does not apply to: **Damages** arising from the willful violation by an **insured**, or with knowledge and consent of an **insured**, of a statute, ordinance or regulation related to the conduct of the profession of the **insured** or its **employees**.

## C. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Conditions apply to Section K:

1. Subject to Paragraph A. Limits of Coverage, 3. Policy Year Annual Aggregate Limit – Sections J, K, and L, of Section H, the **Social work**, Foster Care and Counseling Liability Limit indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** arising out of a **social work occurrence**.

2. All **damages** arising out of **social work** to any one person or family, including a **foster care family**, occurring over any period of time shall be considered incurred because of one **social work occurrence**.

3. Our obligation to indemnify all **insureds** under the Supplementary Indemnification Agreement, Paragraph A.2. above, is limited to $250,000 as a Policy Year Annual Aggregate.

# SECTION L

# MEDICAL LIABILITY

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section L. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENT

We will pay those sums that the **insured** becomes legally obligated to pay as **damages** arising out of **medical incidents** to which this coverage applies. The **medical incident** must take place during the Term of Coverage and within the Coverage Territory.

Also:

1. We will have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance applies. We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, claim proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage or afforded, except at our sole discretion.

2. The amount we will pay for **damages** is limited as described in the Primary Liability Declarations and paragraph C., Limits of Coverage Conditions of this Section.

3. We may investigate and settle any claim or **suit** at our discretion.

4. Our right and duty to defend ends when we have paid the applicable Limits of Coverage or otherwise exhausted the Policy Year Annual Aggregate Limit – Applicable to Sections J., K., and L., shown in the Primary Liability Declarations.

5. If this insurance does not apply, we have no duty to defend.

6. We will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph C., Common Supplementary Payments Conditions, of Section H.

## B. EXCLUSIONS

Except as expressly described below, this Section is subject to B. Exclusions, of Section H., Terms & Conditions Applicable To Primary Liability Insurance.

1.  Contractual Liability

    Exclusion 2. Contractual Liability, of Section H. does not apply and the following Exclusion is added to this Section L.:

    Liability assumed by any **insured** under any contract or agreement relating to the services of medical physicians, pharmacists, dentists, nurse practitioners, midwives, physician's assistants or any organization employing medical physicians, pharmacists, dentists, nurse practitioners, midwives or physician's assistants.

2.  Professional Services

    Exclusion 11. Professional Services, of Section H. does not apply to this Section and the following Exclusion is added to this Section L.:

    Any **damages** arising out of the rendering or failure to render professional services, other than healthcare services, including, but not limited to veterinary services **social work**, **foster care services**, psychological counseling, psychological therapy, psychological evaluation for program placement, legal accounting, financial, appraisal, architectural, cosmetic, physical therapy, massage, optical, optometric, ear piercing and engineering services.

3.  The following additional Exclusion is added to this Section L.:

    This Section L. does not apply to **damages**:

    a.  Arising from the liability of any individual hired by a patient or employed by or on behalf of the patient.

b.  Arising from any fines, penalties, injunctive reliefs imposed by law, attorney's fees or administrative fees for which the **insured** becomes liable arising from discrimination **suits** brought by any individual, any class of individuals or governmental agency.

c.  Arising from liability arising out of the violation by you of any law or regulation imposing criminal penalties.

d.  Expenses incurred by the **insured** for first aid at the time of an **accident**.

## C. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Conditions apply to Section L.:

1.  Subject to Paragraph A. Limits of Coverage 3., Policy Year Annual Aggregate Limit – Sections J., K., and L., of Section H., the Medical Liability Each **Medical incident** Limit is the most we will pay for the sum of all **damages** arising out of a **medical incident**.

2.  Any **damages** arising out of the furnishing of services including any **medical incidents** or a series of related **medical incidents**, occurring over any period of time to any one person shall be considered incurred because of one **medical incident**.

## D. DEFINITIONS

The definition of **insured** in Common Definitions of Section H. is modified as follows:

The following is added to the definition of **insured**:

j.  **Insured** does not include:

    i.  Any of the following persons, whether they are employees of an **Insured** or not: medical physicians, pharmacists, dentists, nurse practitioners, midwives or physician's assistants; or

    ii. Any organization other than the Named **Insured** employing medical physicians, pharmacists, dentists, nurse practitioners, midwives or physician's assistants.

# SECTION M
# PERSONAL AND ADVERTISING INJURY LIABILITY

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section M. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENT

We will pay those sums that the **insured** becomes legally obligated to pay as **damages** because of **personal and advertising injury** to which this insurance applies. The **personal and advertising injury** must be caused by an offense committed during the Term of Coverage that takes place in the Coverage Territory.

Also:

1. We will have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance

   applies. We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, claim proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage afforded, except at our sole discretion.

2. The amount we will pay for **damages** is limited as described in the Primary Liability Declarations and paragraph C., Limits of Coverage Conditions, of this Section M.;

3. We may investigate and settle any claim or **suit** at our discretion.

4. Our right and duty to defend ends when we have paid the applicable Limits of Coverage.

5. If this insurance does not apply, we have no duty to defend.

6. We will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph C., Common Supplementary Payments Conditions of Section H.

## B. EXCLUSIONS

Except as expressly provided below, this Section is subject to B. Common Exclusions of Section H., Terms and Conditions Applicable to Primary Liability Insurance.

1. The following exclusions of A. Common Exclusions of Section H. are not applicable to this Section: 2.Contractual Liability, and 19. **Personal and advertising injury**.

2. The following Exclusion is added to this Section M.:

   This Section M. does not apply to **damages** arising out of **personal and advertising injury**:

   a. **Knowing Violation Of Rights Of Another**

      Caused by or at the direction of the **insured** with the knowledge that the act would violate the rights of another.

   b. **Material Published With Knowledge Of Falsity**

      Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity.

   c. **Material Published Prior To Term Of Coverage**

      Arising out of oral or written publication of material whose first publication took place before the beginning of the Term of Coverage.

   d. **Criminal Acts**

      Arising out of a criminal act committed by or at the direction of the **insured**.

   e. Contractual Liability

      Of another but assumed in a contract or agreement by the **insured**.  This exclusion does not apply to liability for **damages** that the **insured** would have in the absence of the contract or agreement.

   f. **Breach Of Contract**

      Arising out of a breach of contract, except an implied contract to use another's advertising idea in your **advertisement**.

   g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

      Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **advertisement**.

   h. **Wrong Description Of Prices**

      Arising out of the wrong description of the price of goods, products, or services stated in your **advertisement**.

   i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

      Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

   j. **Insureds In Media And Internet Type Businesses**

      Committed by an **insured** whose activities include the designing or determining content of websites for others, or an Internet search, access, content or service provider.

   k. **Electronic Chatrooms Or Bulletin Boards**

      Arising out of an electronic chatroom or bulletin board the **insured** hosts, owns, or over which the **insured** exercises control.

   l. **Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

## C. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Condition applies to Section M.:

The **Personal and advertising injury** Liability (Section M.) Policy Year Annual Aggregate Limit indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** under this Section M. during each Policy Year.

# SECTION N
# NON-OWNED AND HIRED
# AUTO LIABILITY

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section N. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENTS

**Insuring Agreements**

We will pay those sums that the **insured** becomes legally obligated to pay as **damages** arising out of the maintenance or use of a **hired auto** by you or your **employees** in the course of your operation, or the use of any **non-owned auto** in your operations by any person.

a. We will have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance applies. We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, claim proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage afforded, except at our sole discretion.

b. We may investigate and settle any claim or **suit** at our discretion.

c. Our right and duty to defend ends when we have paid the applicable Limits of Coverage.

d. We will not pay defense costs nor shall we be obligated to provide a defense for claims or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

e. If this insurance does not apply, we have no duty to defend the **insured** under this Section.

f. The amount we will pay for **damages** is described in the Primary Liability Declarations and Section H.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under C., Common Supplementary Payments Conditions of Section H.

## B. EXCLUSIONS

Except as expressly described below, this Section is subject to B. Common Exclusions, of Section H., Terms & Conditions Applicable To Primary Liability Insurance.

1. The exclusions of Section H., B. Common Exclusions, other than 1. Expected or Intended Injury, 4. Workers' Compensation or Similar Laws, 5. Employment-Related Practices, 7. Pollution, 10. War and 17. Nuclear Energy Liability, are deleted and replaced by the following:

    a. **Bodily injury** to:

        (1) An **employee** of the **insured** arising out of and in the course of:

            (a) Employment by the **insured**; or

            (b) Performing duties related to the conduct of the **insured's** operations; or

        (2) The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph (1) above.

        This exclusion applies:

        (1) Whether the **insured** may be liable as an employer or in any other capacity; and

        (2) To any obligation to share **damages** with or repay someone else who must pay **damages** because of injury.

This exclusion does not apply to:

(1) Liability assumed by the **insured** under an **insured contract**; or

(2) **Bodily injury** arising out of and in the course of domestic employment by the **insured** unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

. **Property damage** to:

(1) Property owned or being transported by, or rented or loaned to the **insured**; or

(2) Property in the care, custody or control of the **insured**.

## C. LIMITS OF COVERAGE CONDITIONS

The Each **Accident** Limit indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** because of **bodily injury** and **property damage** arising out of any one **accident**.

## D. DEFINITIONS

1. The definition of **insured** of Section H. does not apply to this Section N. The following definition of **Insured** applies:

**Insured**:

Each of the following is an **Insured** under this Section N. to the extent set forth below:

. You;

. Any other person using a hired **auto** with your permission;

. For a **nonowned auto**;

(1) Any partner or executive officer of yours; or

(2) Any **employee** of yours, but only while such nonowned **auto** is being used in your operations; and

d. Any other person or organization, but only for their liability because of acts or omissions of an **insured** under a., b. or c. above.

None of the following is an **insured**:

a. Any person engaged in the business of his or her employer for **bodily injury** to any co-employee of such person injured in the course of employment or to the spouse, child, parent, brother or sister of that co-employee as a consequence of such **bodily injury**, or for any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury;

b. Any partner or executive officer for any **auto** owned by such partner or officer or a member of his or her household;

c. Any person while employed in or otherwise engaged in duties in connection with an **auto** business other than an **auto** business you operate;

d. The owner or lessee (of whom you are a sublessee) of a hired **auto** or the owner of a non-owned **auto** or any agent or **employee** of such owner or lessee; or

e. Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named **Insured** in the Declarations.

2. The following additional definition applies to this section:

**Auto** business means the business or occupation of selling, repairing, servicing, storing or parking **autos**.

# SECTION O

# MEDICAL PAYMENTS

This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section O. in the Primary Liability Declarations.

Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.

## A. COVERAGE AGREEMENT

1. We will pay medical expenses as described below for **bodily injury** caused by an **accident**:

a. On premises you own or rent;

b. Within ten (10) feet of the premises you own or rent; or

c. Because of your operations, provided that:

   i. The **accident** takes place in the Coverage Territory and during the Term of Coverage shown in the Policy Declarations;

   ii. The **bodily injury** must be discovered and treated within one year of the date of the **accident**;

   iii. The expenses are incurred within three years of the date of the **accident** provided treatment is commenced within one year of the date of the **accident**; and

   iv. The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

2. We will make these payments regardless of fault. We will pay reasonable expenses for:

a. First aid at the time of an **accident**;

b. Necessary medical, surgical, x-ray and dental services, eyeglasses, contact lenses, hearing aids, drugs, therapy and prosthetic devices; and

c. Necessary ambulance, hospital, professional nursing and funeral services.

## B. EXCLUSIONS

Except as expressly described below, this Section is subject to B. Common Exclusions, of Section H., Terms & Conditions Applicable To Primary Liability Insurance.

This following additional Exclusion is added to this Section O.:

We will not pay expenses for **bodily injury**:

- To any **insured**, except volunteers.

- To any **employee** of an **insured**.

- To any person who resides at locations, premises or facilities owned, leased or operated by the Named **Insured**.

- To a person injured while practicing, instructing or participating in any athletics activities, physical exercises or games, sports, or athletic practices or contests.

## C. SUPPLEMENTARY PAYMENTS CONDITIONS

C., Common Supplementary Payments Conditions, of Section H. does not apply to this Section.

## D. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Conditions apply to Section O.:

1. The Medical Payments (Section O.) Per Person Limit indicated in the Primary Liability Declarations is the most we will pay for all medical expenses sustained by any one person.

2. The Medical Payments (Section O.) Per **Occurrence** Limit indicated in the Primary Liability Declarations is the most we will pay for all medical expenses arising out of any one **occurrence**.

3. The Medical Payments (Section O.) Policy Year Annual Aggregate Limit indicated in the Primary Liability Declarations is the most we will pay for all medical expenses during each Policy Year.

These conditions apply in addition to those of Section H.

# SECTION P

# EMPLOYEE BENEFIT ADMINISTRATION LIABILITY

**SECTION P PROVIDES
CLAIMS-MADE COVERAGE.
PLEASE READ THE COVERAGE CAREFULLY.**

**This Section applies only if a "Yes" is indicated in the Coverages Provided section of the Policy Declarations and a Limit of Coverage is shown for Section P. in the Primary Liability Declarations.**

**Except as expressly described below, this Section is subject to Section A., General Conditions Applicable to this Entire Policy and to Section H., Terms & Conditions Applicable to Primary Liability Insurance.**

## A. COVERAGE AGREEMENT

We will pay those sums that the **insured** becomes legally obligated to pay as **damages** because of **claims** arising out of **employee benefit administration** to which this insurance applies. Coverage only applies to such **claims** first made in writing against the **insured** during the Term of Coverage shown in the Policy Declarations if the **insured**, at the effective date of this policy, had no knowledge of or could not have reasonably foreseen any circumstances resulting in the **claim** being made. The **employee benefit administration** must take place within the Coverage Territory.

Also:

1. We have the right and duty to defend the **insured** against any **suit** seeking **damages** to which this insurance applies. We will not provide a defense or pay attorneys fees or defense costs, however, for any loss, **claim** proceeding, **suit** or any other legal or administrative action or part thereof to which this insurance does not apply and/or for which there is no coverage or indemnification afforded except at our sole discretion.

2. The amount we will pay for **damages** is limited as described in the Primary Liability Declarations and D., Limits of Coverage Conditions of this Section.

3. We may investigate any **claim** and settle any **claim** or **suit** at our discretion.

4. Our right and duty to defend ends when we have paid the applicable Limit of Coverage or otherwise exhausted the **Employee** Benefit Administration Liability (Section P.) Policy Year Annual Aggregate Limit shown in the Primary Liability Declarations.

5. If this insurance does not apply, we have no duty to defend.

6. We will not pay defense costs nor shall we be obligated to provide a defense for **claims** or legal actions in any way requesting punitive or exemplary **damages**, except at our discretion.

7. A **claim** by a person or organization seeking **damages** will be deemed to have been made when notice of such **claim** is received and recorded by any **insured** or by us, whichever comes first.

8. All **claims** for **damages** causing loss to any one person, including the person's dependents and beneficiaries, or organization as a result of **employee benefit administration** will be deemed to have been made at the time the first of those **claims** is made against any **insured**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph C., Supplementary Payments Conditions.

## B. EXCLUSIONS

1. **Inapplicable Section H. Exclusions**

   Exclusions 1. through 24. of Section H. do not apply to this Section P.

2. The following Exclusions are added to this Section P.:

   This insurance does not apply to:

   a. Dishonest, Fraudulent, Criminal Or Malicious Act

      **Damages** arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any **insured**, including the willful or reckless violation of any statute.

   b. **Bodily injury**, **property damage**, Or Personal and Advertising Injury

      **Bodily injury**, **property damage**, or personal and advertising injury.

   c. Failure to Perform a Contract

      **Damages** arising out of failure of performance of contract by any insurer.

   d. Insufficiency of Funds

      **Damages** arising out of an insufficiency of **funds** to meet any obligations under any plan included in the **employee** benefit program.

   e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

      Any **claim** based upon:

      (1) Failure of any investment to perform;

      (2) Errors in providing information on past performance of investment vehicles; or

      (3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the **employee** benefit program.

   f. Workers' Compensation And Similar Laws

      Any **claim** arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

   g. ERISA

      **Damages** for which any **insured** is liable because of liability imposed on a fiduciary by the **Employee** Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

   h. Available Benefits

      Any **claim** for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the **insured**, from the applicable funds accured or other collectible insurance.

   i. Taxes, Fines Or Penalties

      Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

   j. Employment-Related Practices

      **Damages** arising out of wrongful termination of employment, discrimination, or other employment-related practices.

## C. SUPPLEMENTARY PAYMENTS CONDITIONS

Subparagraph 2. of C., Supplementary Payments of Section H. does not apply to this Section.

## D. LIMITS OF COVERAGE CONDITIONS

The following additional Limits of Coverage Conditions apply to Section P.:

1. The **Employee** Benefits Administration Liability (Section P.) Each **Claim** Limit indicated in the Primary Liability Declarations is the most we will pay for the sum of all **damages** arising out of a single **claim**.

2. The **Employee** Benefits Administration Liability (Section P.) Policy Year Annual Aggregate Limit indicated in the Primary Liability Declarations is the most we will pay for all **claims** for liability arising out of **employee benefit administration** during each Policy Year.

## E. DEFINITIONS

The following additional definitions apply or are modified for Section P.:

1. **Claim** means a written demand received by any **insured** for **damages** alleging liability of the **insured** arising out of **employee benefit administration**, including the institution of a **suit** for such **damages** against an **insured**.

2. The definition of **insured** of Section H. does not apply.

   a. For purposes of this Section P., **insured** means you and all of your executive officers and directors, and **employee**s but only while acting to provide authorized **employee benefit administration**.

   b. Any organization (other than a joint venture, limited liability company, or a partnership) newly acquired or formed by you, and in which you have a majority interest is also an **insured**.

   Such an organization is not an **insured**:

   i. If there is other similar coverage available to it;

   ii. After 90 days immediately following that acquisition or formation or upon expiration or cancellation of the policy, whichever is earlier;

   iii. For **employee benefit administration** activies that occurred prior to the acquisition or formation.

   No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Policy Declarations as an **insured**.

## F. EXTENDED REPORTING PERIOD

1. If we cancel or nonrenew this Section and coverage is not replaced, an Extended Reporting Period will be provided, covering **claims** first made against any **insured** during the period of twelve (12) months immediately following the date of such cancellation or nonrenewal, but only with respect to any **employee benefit administration** activities committed before the date of such cancellation or nonrenewal.

2. A **claim** first made during the Extended Reporting Period will be deemed to have been made on the last day insurance was provided by this Section.

3. The Extended Reporting Period does not extend the Term of Coverage shown in the Policy Declarations or change the scope of coverage.

4. The Extended Reporting Period does not reinstate or increase the Limits of Coverage applicable to any **claim** to which this Section applies.

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: 0 |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LOSS PAYEE**

This endorsement modifies insurance provided under the following **General Property Coverage (Section C.), Specified Personal Property Coverage (Section E.)** and **Computer Coverage (Section F.).**

The following is named as Loss Payee, as their interest may appear:

EAGLE HEIGHTS, LLC
20495 ASH DRIVE
EAGLE, NE 68347

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

This page intentionally left blank

| Policy No.: NPP1000263 04 | Endorsement No.: 0 |
| --- | --- |
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OMNIBUS ADDITIONAL INSURED ENDORSEMENT**

It is agreed that the following are Additional Insureds under this policy only if and to the extent required by contract with the Named Insured and then solely with respect to the Additional Insured's liability arising from the operations, acts and omissions of the Named Insured or with respect to the Additional Insured's liability arising from property owned or controlled by the Named Insured:

Any person or organization required to be named as an Additional Insured in a written contract or agreement and approved by us as an Additional Insured.

No coverage is provided under this policy to any Additional Insured for liability arising out of its own operations or premises, unless the Additional Insured's premises are leased to or controlled by the Named Insured and, then, only for liability of the Additional Insured arising out of Named Insured's use thereof.

No coverage is provided under this policy to subcontractors, joint ventures or venture partners unless specifically named by endorsement to this policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: 0 |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED MORTGAGEE**

This endorsement modifies insurance provided under the following:

**General Property Coverage (Section C.).**

The following named entity is named as Mortgagee, subject to the terms and conditions of the Mortgage Clause of this policy:

AMERICAN NATIONAL BANK
PO BOX 2139
OMAHA, NE 68103

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

This page intentionally left blank

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**VACANT OR UNOCCUPIED BUILDINGS**

A.  Paragraph **7. Vacancy** of Subsection **C. Loss Conditions of Section B. Terms & Conditions** of Form PKG 1001 is deleted in its entirety and replaced by the following.

B.  By purchase of this policy, the Named Insured has represented to First Nonprofit Insurance Company that all buildings otherwise insured under **Sections B, C, D, E and F** of this policy are occupied and shall remain occupied during the entire term of this policy.

C.  New Loss Condition: The following Loss Condition applies:

**VACANT OR UNOCCUPIED BUILDING LOSS CONDITIONS**

1.  This Loss Condition applies to each building otherwise insured under this policy that is **vacant** or **unoccupied** at the time of the loss.

2.  Further, with respect to any and all perils or causes of loss insured under this policy, First Nonprofit Insurance Company affirmatively states and the **insured** agrees that any building insured under **Sections B, C, D, E or F of this policy** which is **vacant** or **unoccupied** has materially affected the acceptance of the risk and hazard assumed under this policy and that should any building be or become **vacant** or **unoccupied** during the term of this policy that the insurance of this policy relating to that building is subject to the conditions which follow:

    a.  **Coverage Agreement**
        We will pay for loss or damage to **vacant** or **unoccupied** buildings and personal property therein from the perils stated in **Cause of Loss** below, and subject to any other applicable terms and conditions of this endorsement and the policy. No coverage for loss of **income** or **extra expense** shall be paid if such loss of **income** or **extra expense** results from or is caused by loss or damage to a **vacant** or **unoccupied** building or personal property therein. No **Additional Coverage** except **Debris Removal** and **Fire Department Service Charge** shall apply to loss or damage to a **vacant** or **unoccupied** building or personal property therein. The

additional funds payable as limitations provided for in the exclusions for **Ordinance or Law**; **Water**; **Fungus Mold, Mildew, Wet Rot Dry Rot and Bacteria** shall not be payable, if otherwise applicable, for any loss or damage to a **vacant** or **unoccupied** building.

b.    **Security**
We will not pay for loss or damage to a **vacant** or **unoccupied** building or to any personal property therein, otherwise insured under this policy, from any peril unless all of the following requirements are met at the time of the loss.

(1)    All ground floor windows must be intact, secured or boarded.
(2)    All doors must be locked and secured.
(3)    All buildings must be inspected by the Named Insured weekly, with a concurrent record maintained as to what conditions in and about the building were found during each inspection.
(4)    The building's heating systems must be operable and kept on during the normal heating season with the heat maintained within the building at a minimum of 50° F.

c.    **Cause of Loss**

(1)    We will not pay for loss or damage occurring to a building, personal property therein, or loss of income or extra expense as a result thereof, otherwise insured under this policy, if said building is **vacant** or **unoccupied** unless such loss or damage is caused by fire or lightning. In the event fire or lightning causes a loss or damage to said property, loss or damage from any other cause is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the fire or lightning loss.
(2)    In the event loss or damage occurs from a peril which would otherwise be insured under this policy and fire ensues causing loss or damage to the property, we will pay for the loss or damage by the fire only, subject to the terms of this Loss Condition and other applicable terms and conditions of this policy.

d.    **Valuation**
We will determine the value of loss to a **vacant** or **unoccupied** building and personal property therein that complies with the

security requirements of subparagraph C.2.b. above, and is otherwise insured by this endorsement and the policy at 85% of the Actual Cash Value at the time of such loss, even if the Declarations indicate that Replacement Cost or Functional Value apply.

e.   **Deductible**
Each loss at a **vacant** or **unoccupied** building that complies with the security requirements of subparagraph C.2.b. above and is otherwise insured by this endorsement and the policy will be subjected to a $25,000 deductible.

f.   **Additional Definitions**
For purposes of this endorsement, the following definitions apply.

(1)   A **vacant** building shall be any structure which for a period of 60 days or more is:

(a)   without content or occupancy by an **insured** or a tenant of the **insured**;

(b)   not actively utilized in the day-to-day operations of the insured or the insured's tenant; or

(c)   without sufficient personal property and/or fixtures to conduct the insured's or an insured's tenant's normal occupancy and/or operations.

A **vacant** building does not include a seasonal camp building, other seasonal buildings, a new building while under construction, or an existing structure currently being renovated or rehabilitated, and has not been used for its intended purpose for a period of at least 60 consecutive days immediately prior to the date of loss.

(2)   An **unoccupied** building shall be any structure which for a period of 60 days or more is not occupied by or utilized in the operations of the insured or a tenant of the insured although the personal property and/or fixtures have not been removed.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**

| Policy No.: NPP1000263 | Endorsement No.: 0 |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COINSURANCE ENDORSEMENT – PROPERTY

This endorsement modifies insurance provided under the following:

**Multiple Peril Policy – Section B, Terms & Conditions – All Property and Related Coverages.**

The following is added to **Section B, Terms & Conditions – All Property and Related Coverages**, paragraph **C. Loss Conditions**, sub-paragraph **4, Loss Payment**:

    f.   **Coinsurance**

| Schedule |
|---|
| **Coinsurance Percentage:** 90% |

The following terms and conditions shall apply in accordance with the loss valuation basis designated in the General Property Declarations for each property at the location at which the loss occurs. If the Covered Property to which the loss occurs is listed in the General Property Declarations as covered on a replacement cost loss valuation basis ("RC"), this Coinsurance condition will be applied to the RC of the Covered Property at that location.  If the Covered Property at which the loss occurs is listed in the General Property Declarations as covered on an actual cash loss valuation basis ("ACV"), this Coinsurance condition will be applied to the ACV of the Covered Property at that location.

(1)   We will not pay the full amount of any loss if the value of Covered Property (whether the loss is to buildings and/or personal property) at the time of loss at the location in which the loss occurs, times the Coinsurance percentage shown above is greater than the Limit of Insurance for the Covered Property.

        Instead, we will determine the largest amount of loss we will pay by applying the computations below.

                

Step (a)   Multiply the value of the respective Covered Property at the time of loss by the respective Coinsurance percentage stated above;

Step (b)   Divide the Limit of Insurance of the respective Covered Property for the described premises by the figure determined in Step (a);

Step (c)   Multiply the total amount of loss for the respective Covered Property, before the application of any deductible, by the figure determined in Step (b); and

Step (d)   Subtract the deductible from the figure determined in Step (c).

We will pay the amount determined in Step (d) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Example No. 1: Underinsurance

When:

| | |
|---|---|
| The value of the Covered Property is: | $250,000 |
| The Coinsurance Percentage for it is: | 90% |
| The Limit of Insurance for it is: | $100,000 |
| The Deductible is: | $1,000 |
| Amount of Loss is: | $40,000 |

Step (a)   $250,000 x 90% = $225,000
(This is the minimum amount of insurance needed to meet your Coinsurance requirement and to avoid a Coinsurance reduction in the loss payment.)

Step (b)   $100,000 ÷ $225,000 = 0.44

Step (c)   $40,000 x 0.44 = $17,600

Step (d)   $17,600 - $1,000 = $16,600
We will pay no more than $16,600. The remaining $23,400 is not covered under this policy.

Example No. 2: Adequate Insurance

When:

| | |
|---|---|
| The value of the Covered Property is: | $250,000 |
| The Coinsurance Percentage for it is: | 90% |
| The Limit of Insurance for it is: | $225,000 |
| The Deductible is: | $1,000 |
| Amount of Loss is: | $40,000 |

Step (a) $250,000 x 90% = $225,000
(This is the minimum amount of insurance needed to meet your Coinsurance requirement and it is the amount of insurance purchased.)

Step (b) $225,000 ÷ $225,000 = 1.0

Step (c) $40,000 x 1 = $40,000

Step (d) $40,000 - $1,000 = $39,000
We will pay $39,000. No Coinsurance reduction in the loss payment applies.

(2) If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

Example No. 3: Two or More Separate Items: Building and Personal Property

When:

| The value of the Covered Property at Location 1 is: | | |
|---|---|---|
| Building at Location No. 1 | $500,000 | |
| Personal Property at Location No. 1 | $100,000 | |
| Total Value at Location 1 is: | | $600,000 |
| The Coinsurance Percentage for each is: | | 90% |
| The Limit of Insurance at Location No. 1 is: (Buildings and Personal Property) | | $500,000 |
| The Deductible is: | | $1,000 |
| Amount of Loss at Location 1 is: | | |
| Building at Location No. 1 | $30,000 | |
| Personal Property at Location No. 1 | $20,000 | |
| Total Loss Amount at Location 1: | | $50,000 |

Step (a) $600,000 x 90% = $540,000
(This is the minimum amount of insurance needed to meet your Coinsurance requirement and to avoid a Coinsurance reduction in the loss payment.)

Step (b) $500,000 ÷ $540,000 = 0.926

Step (c) $50,000 x 0.926 = $46,300

Step (d) $46,300 - $1,000 = $45,300
We will pay no more than $45,300. The remaining $4,700 is not covered under this policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

This page intentionally left blank

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

**Section I.**
**Bodily Injury and Property Damage Liability**

Name of Organization:  COMPASS MINISTRIES

**Section I.** of this policy includes as an **Additional Insured** the person or organization shown above but solely with respect to that person's or organization's liability arising out of the **Named Insured's** operations or premises owned by the **Named Insured**.

This modification does not provide coverage to the **Additional Insured** for liability arising out of its operations or premises owned by or rented to the **Additional Insured**.

The inclusion of the above named person or organization does not alter the terms, conditions and exclusions applicable to **Section I**.

This endorsement is effective at the inception of this policy unless otherwise noted above.

## ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

**Section I.**
**Bodily Injury and Property Damage Liability**

Name of Organization: CITY OF OMAHA

**Section I.** of this policy includes as an **Additional Insured** the person or organization shown above but solely with respect to that person's or organization's liability arising out of the **Named Insured's** operations or premises owned by the **Named Insured**.

This modification does not provide coverage to the **Additional Insured** for liability arising out of its operations or premises owned by or rented to the **Additional Insured**.

The inclusion of the above named person or organization does not alter the terms, conditions and exclusions applicable to **Section I**.

This endorsement is effective at the inception of this policy unless otherwise noted above.

### ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED**

This endorsement modifies insurance provided under the following:

**Section I.
Bodily Injury and Property Damage Liability**

Name of Organization:  EAGLE HEIGHTS, LLC

20495 ASH DRIVE EAGLE, NE 68347

**Section I.** of this policy includes as an **Additional Insured** the person or organization shown above but solely with respect to that person's or organization's liability arising out of the **Named Insured's** operations or premises owned by the **Named Insured**.

This modification does not provide coverage to the **Additional Insured** for liability arising out of its operations or premises owned by or rented to the **Additional Insured**.

The inclusion of the above named person or organization does not alter the terms, conditions and exclusions applicable to **Section I**.

This endorsement is effective at the inception of this policy unless otherwise noted above.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TEACHER'S LIABILITY

This endorsement modifies insurance provided under **Social Work, Foster Care and Counseling Liability (Section K.)** of this policy:

Paragraph A. Coverage Agreements is amended by the addition of the following:

We will pay those sums that the **insured** becomes legally obligated to pay as damages arising out of teaching activities of the **insured**.  Teaching Activities means acts or omissions in connection with the provision of educational or instructional services to pupils or students of the named insured actually occurring during the Term of Coverage.

## ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MEDICAL LIABILITY COVERAGE TO INCLUDE PHYSICAL THERAPY**

This endorsement modifies insurance provided under the following:

**Multiple Peril Policy**
**Section L.**
**Medical Liability**

Section **L. Medical Liability**, paragraph **B. Exclusions**, item **2. Professional Services** is deleted and replaced with the following:

    2.    Professional Services

        Exclusion 11. Professional Services, of Section H. does not apply to this Section and the following Exclusion is added to this Section L:

        Any **damages** arising out of the rendering or failure to render professional services, other than  healthcare services and physical therapy , including, but not limited to veterinary services, **social work, foster care services,** psychological counseling, psychological therapy, psychological evaluation for program placement, legal, accounting, financial, appraisal, architectural, cosmetic, massage, optical, optometric, ear piercing and engineering services.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RETROACTIVE DATE**

This endorsement modifies insurance provided under **Employee Benefits Administration Liability (Section P.)**.

This insurance does not apply to Employee Benefits Administration Liability which occurred before      6/1/2011      , the Retroactive Date.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**

| **POLICY NO.:** NPP1000263 04 | **ENDORSEMENT NO.:** 0 |
|---|---|
| **INSURED:** Abide Network, Inc. | **EFFECTIVE DATE:** 6/1/2017 |

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| **SCHEDULE – PART I** |
|---|
| **Terrorism Premium (Certified Acts)**     $ 305.00 |
| **This premium is the total Certified Acts premium attributable to the following policy(ies):** |
|   Commercial Property Coverage Part |
|   Commercial General Liability Coverage Part |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |

| **SCHEDULE – PART II** |
|---|
| **Federal share of terrorism losses**     83     **% Year: 20**   17 |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses**     82     **% Year: 20**   18 |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the Policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the Policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Contains Copyrighted Material of Insurance Services Offices, Inc. used with permission

| | |
|---|---|
| **POLICY NO.:** NPP1000263 04 | **ENDORSEMENT NO.:** 0 |
| **INSURED:** Abide Network, Inc. | **EFFECTIVE DATE:** 6/1/2017 |

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

MULTIPLE PERIL POLICY

**A. Cap On Certified Terrorism Losses**

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

Contains Copyrighted Material of Insurance Services Offices, Inc. used with permission

**This page intentionally left blank**

| **POLICY NO.:** NPP1000263 04 | **ENDORSEMENT NO.:** 0 |
|---|---|
| **INSURED:** Abide Network, Inc. | **EFFECTIVE DATE:** 6/1/2017 |

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

MULTIPLE PERIL POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a **certified act of terrorism** that is awarded as punitive damages.

**B.** The following definition is added:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: 0 |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

**MULTIPLE PERIL POLICY**
**SECTION H. TERMS AND CONDITIONS TO PRIMARY LIABILITY**

**A.** Section **B. Common Exclusions**, paragraph **8. Aircraft, Auto Or Watercraft** is replaced by the following:

Except as expressly provided in a specific Section, insurance provided under all Primary Liability coverages provided by this policy does not apply to:

**8. Aircraft, Auto Or Watercraft**

**a. Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**b. Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **(2)** does not apply to:

**i.** A watercraft while ashore on premises you own or rent;

**ii.** A watercraft you do not own that is:

   **a)** Less than 26 feet long; and

   **b)** Not being used to carry persons or property for a charge;

06/2016 PKG 5008                                                                                       Page 1 of 2

Includes copyrighted, material of Insurance Services Office Inc., with its permission.

    **iii.** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**B.** The following definition is added to the **D. Common Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

Includes copyrighted, material of Insurance Services Office Inc., with its permission.

| Policy No.: NPP1000263 04 | Endorsement No.: 0 |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED**

This endorsement modifies insurance provided under the following:

**MULTIPLE PERIL POLICY**
**SECTION H. TERMS AND CONDITIONS TO PRIMARY LIABILITY**

Section **B. Common Exclusions**, paragraph **22. Electronic Data** is replaced by the following:

This insurance does not apply to:

**22. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**
**Damages** arising out of:
**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if **damages** are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Includes copyrighted, material of Insurance Services Office Inc., with its permission.

**This page intentionally left blank**

| Policy No.:NPP1000263 04 | Endorsement No.:0 |
|---|---|
| Insured: Abide Network, Inc. | Effective Date:6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION**

This endorsement modifies insurance provided under the following:

**MULTIPLE PERIL POLICY**
**SECTION H. TERMS AND CONDITIONS TO PRIMARY LIABILITY**

Section B. Common Exclusions is amended to add the following:

This insurance does not apply to:

**23. Recording And Distribution Of Material Or Information In Violation Of Law**

**Damages** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information

Includes copyrighted, material of Insurance Services Office Inc., with its permission.

**This page intentionally left blank**

| Policy No.: NPP1000263 04 | Endorsement No.: |
|---|---|
| Insured: Abide Network, Inc. | Effective Date: 6/1/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NEBRASKA CHANGES**

This endorsement modifies insurance provided under the following:

**Multiple Peril Policy**

1.   Paragraph **C. Cancellation and Nonrenewal** in **Section A. General Conditions Applicable to This Entire Policy** is deleted and replaced by the following:

   **C.   Cancellation and Nonrenewal**

   1.   Cancellation

      a.   The first Named Insured shown in the Policy Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

      b.   Cancellation Requirements

         (1)   Policies in Effect 60 Days or Less
            If this policy has been in effect for 60 days or less we may cancel this policy for any reason.

         (2)   Policies in Effect More than 60 Days
            If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

            (a)   Nonpayment of premium;
            (b)   The policy was obtained through material misrepresentation;
            (c)   Any insured has submitted a fraudulent claim;
            (d)   Any insured has violated the terms and conditions of this policy;
            (e)   The risk originally accepted has substantially increased;
            (f)   Certification to the Director of Insurance of our loss of reinsurance which provided coverage to us for all or a substantial part of the underlying risk insured; or

        (g)     The determination by the Director of Insurance that the continuation of the policy could place us in violation of the Nebraska Insurance laws.

   (3)    If we cancel this policy subject to b.(1) or b.(2) above, we will mail to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

        (i)     10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (ii)    60 days before the effective date of cancellation if we cancel for any other reason.

**c.**    Mailing Requirements

   (1)    We will mail our notice by first class mail to the first Named Insured's last mailing address known to us. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

   (2)    The following is added to c.(1) above applicable to **Section N. Non-Owned and Hired Auto Liability**:

If the policy has been in effect 60 days or more or is a renewal or continuation policy, and we cancel for:

        (a)    Nonpayment of premium to a premium finance company; or

        (b)    Any reason other than non-payment of premium,

notice of cancellation will be sent by registered or certified mail.

**d.**    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.**    If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**2.**    Nonrenewal

     a.      If we decide not to renew this policy, we will mail written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured, at least 60 days prior to the expiration date of this policy.

     b.      Any notice of nonrenewal will be mailed to the first Named Insured's last mailing address known to us. A United States Postal Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

**2.**    Paragraph **I. Other Insurance** in **Section A. General Conditions Applicable to This Entire Policy** is amended to include the following:

Section B - All Property and Related Coverages
You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.

If there is other insurance covering the same loss or damage, other than that described above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**3.**    Paragraph **M. Representations; Concealment; Fraud** in **Section A. General Conditions Applicable to This Entire Policy** is deleted and replaced by the following:

**M.**    **Representations; Concealment; Fraud**

    1.    A misrepresentation or warranty made by you or on your behalf in the negotiation of or application for this policy will void this policy if:

        a.    It is material;
        b.    It is made with the intent to deceive;
        c.    We rely on it; and
        d.    We are deceived to our injury.

    2.    A breach of warranty or condition will void the policy if such breach exists at the time of loss and contributes to the loss.

**4.**    Paragraph **N. Subrogation: Transfer of Rights of Recovery Against Others to Us** in **Section A. General Conditions Applicable to This Entire Policy** is amended to include the following:

If we pay an innocent coinsured subject of abuse for loss arising out of abuse by another insured who is a current or former family member or household member, the rights of the innocent coinsured to recover damages from the abuser are transferred to us to the extent of our payment. The innocent coinsured may not waive such rights to recover against the abuser.

5.    Paragraph **A.2. Exclusion & Limitations** in **Section B. Terms & Conditions – All Property and Related Coverages** is amended to include the follow:

n.    We will not pay for loss or damage arising out of any act committed:

(1)    By or at the direction of any insured; and
(2)    With the intent to cause a loss.

However, this exclusion does not apply to deny coverage to an innocent insured to the extent of that insured's legal interest (but not exceeding the applicable Limit of Insurance) in Covered Property that has sustained damage if the damage arises out of abuse of the innocent insured by a current or former family member or household member and is otherwise covered under this Policy. We may apply reasonable standards of proof to claims for such damage.

6.    Paragraph **C.2. Appraisal** Loss Condition in **Section B. Terms and Conditions – All Property and Related Coverages** is deleted and replaced by the following:

2.    Appraisal

If we and you disagree on the value of the property or the amount of loss, both parties may agree in writing to an appraisal of the loss and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.    Pay its chosen appraiser; and
b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

7.   Paragraph **C.4.c. Loss Payment** Loss Condition in **Section B. Terms & Conditions – All Property and Related Coverages** is deleted and replaced by the following:

    c.   We will give you notice, within 15 days after we receive settlement information or a properly executed statement of loss, that we:

        (1)   Accept your claim;
        (2)   Deny your claim; or
        (3)   Need more time to investigate your claim.

    If we deny your claim, the denial will be given to you in writing.

    If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 30 days, of the status of the investigation and of the continued time needed for the investigation. However, if the claim is in litigation, the requirements pertaining to notice of the status of our investigation do not apply.

8.   Paragraph **C.8. Valuation** Loss Condition in **Section B. Terms & Conditions – All Property and Related Coverages** is amended to include the following:

    d.   When this policy is written to insure any real property in Nebraska against loss by fire, tornado, windstorm, lightning or explosion and the property insured shall be wholly destroyed, without criminal fault on the part of you or your assignee, the amount of the insurance written on such real property shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages.

9.   **Section B. Terms & Conditions – All Property and Related Coverages**, the following is added to any provision which uses the term actual cash value:

    In our determination of the actual cash value of Covered Property at the time of loss or damage, we will take into account factors such as depreciation, deterioration and obsolescence.

10.   In Paragraphs **4.** and **5.** of this endorsement, abuse means attempting to cause or intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another person, including a minor child.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**This page intentionally left blank**



# AmTrust North America

## An AmTrust Financial Company

April 26, 2018


Mr. Aaron Flaugh
C/O
Mr. Wade Tutt
Paramount Adjusters, Inc.
430 W. Erie, Ste. 601
Chicago, IL 60654

**Policy Number:** NPP1000263
**Claim Number:** 2739075
**Date of Loss:** 06/29/2017
**Location:** 42 Locations Omaha, NE

Dear Mr. Flaugh:

Your claim is accepted. We are enclosing a copy of the estimate we prepared for the repairs to your property from the fire damage that occurred on the above date. The payment has been issued and will arrive separately.

We would like you to know that your acceptance of our check is not a release, nor a waiver, of any of your rights under the policy. Your claim can be re-opened, or re-evaluated, if appropriate. You will need to contact the contractor of your choice to make the repairs. We ask that you address any differences in our estimate and your contractor's estimate prior to beginning the work. To the extent you disagree with our decision, we encourage you to promptly notify us and provide any additional information you believe is necessary to ensure that First Nonprofit Insurance Company makes a fully informed decision regarding your claim. In the event that you and we are unable to resolve any dispute informally, we reserve the right to determine the amount of the loss pursuant to the Appraisal provision outlined in the policy. Please understand that various policy provisions may apply should additional information come to light, and First Nonprofit Insurance Company reserves its rights accordingly.

It is your responsibility to make sure that the covered damages are repaired properly and in a timely manner. We will not be responsible for faulty or inadequate repair work or any additional damage caused by a failure to expedite repairs or other failure to protect the property from further damage.

To summarize our estimate:

|  | Building |
|---|---|
| Estimated Replacement Cost | $527,741.41 |
| Less Recoverable Depreciation | $29,272.14 |
| Less Non-recoverable Depreciation | 0 |
| Actual Cash Value Loss | $498,469.27 |
| Less your share (deductible) | $10,000.00 |
| Net Payment | $488,469.27 |

**EXHIBIT 3**

Abide Netwrok, Inc.
2739075
April 26, 2018
Page 2

In order to make a claim for replacement cost coverage:

- You must notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building;  (12/26/2018)
- You must repair or replace the damaged building or property within a reasonable time;
- Submit itemized invoice(s) of the completed repair or replacement and the materials used;
- Submit any other receipts or documents you may have or that we may request to support your claim for replacement cost coverage;
- Remember to provide your claim number or policy number on all items submitted; and
- Mail the documents to us at the address at the bottom of the front page of this letter.  If you prefer, you may email the documents to us at DallasClaimsMail@Amtrustgroup.com.

Once we receive the requested information, we will be in a position to evaluate your replacement cost claim in accordance with the terms and conditions of your policy.  The sum of all payments we make for this loss will be no more than the least of the following amounts:

(1) The limit of liability under this policy that applies to the building or property at issue, less your deductible;
(2) The replacement cost of that part of the building or property damaged with material of like kind and quality and for like use, less your deductible; or
(3) The necessary amount actually spent to repair or replace the damaged building or property, less your deductible.

Should you have any questions or wish to discuss this claim further, please call me at the number below.

Sincerely,

*Allen Jones*

Allen Jones, AIC
General Adjuster
Amtrust North America
210-419-3671
Allen.Jones@Amtrustgroup.com


CC:  Mr. Aaron Flaugh
      P.O. Box 11489
      Omaha, NE 68111

      Risk Placement Services, Inc.
      Celena Lefler via e-mail

Enclosures: Payment Worksheet, Envista Engineering Reports

## Abide Network 2739075 Payment Schedule

| | RCV | | ACV | | |
|---|---|---|---|---|---|
| Loc 1-1 ; 3335 Fowler Avenue | $ | - | $ | - | Work Completed |
| Loc 2-1 ; 3343 Fowler Avenue | $ | 34,904.27 | $ | 34,904.27 | Work Completed |
| Loc 3-1 ; 3126 Lake Street | $ | 13,038.29 | $ | 13,038.29 | Vacant $25,000 deductible |
| Loc 4-1 ; 3021 Larimor | $ | - | $ | - | No Damage Found |
| Loc 5-1 ; 3325 Fowler Avenue | $ | 7,590.66 | $ | 4,933.93 | Estimate of Damage |
| Loc 6-1 ; 3311 Fowler Avenue | $ | 15,547.33 | $ | 15,547.33 | Work Completed |
| Loc 7-1 ; 4125 N. 19th Street | $ | 25,405.69 | $ | 25,405.69 | Work Completed |
| Loc 8-1 ; 4716 N. 40th Avenue | $ | 2,812.44 | $ | 1,968.71 | Estimate of Damage |
| Loc 9-1 ; 5320 N. 25th Street | $ | 3,721.40 | $ | 2,046.77 | Estimate of Damage |
| Loc 10-1 ; 3324 Fowler Avenue | $ | 11,768.70 | $ | 11,768.70 | Work Completed |
| Loc 11-1 ; 3526 Seward Street | $ | 11,158.49 | $ | 11,158.49 | Work Completed |
| Loc 12-1 ; 3976 & 3978 Seward Street | $ | 3,712.40 | $ | 2,413.06 | Estimate of Damage |
| Loc 13-1 ; 1605 & 1607 N. 40th Street | $ | 8,692.03 | $ | 8,692.03 | Work Completed |
| Loc 14-1 ; 4116 N. 39th Street | $ | 438.24 | $ | 350.59 | Estimate of Damage |
| Loc 15-1 ; 4123 N. 39th Street | $ | - | $ | - | No Damage Found |
| Loc 16-1 ; 3169 Fowler Ave | $ | 11,457.51 | $ | 11,457.51 | Work Completed |
| Loc 17-1 ; 3456 Sahler Street | $ | - | $ | - | Vacant $25,000 deductible |
| Loc 18-1 ; 3841 Decatur | $ | - | $ | - | No Damage Found |
| Loc 19-1 ; 3180 Meredith | $ | 12,266.77 | $ | 12,266.77 | Work Completed |
| Loc 20-1 ; 3912 N. 41st Street | $ | 8,918.49 | $ | 8,917.49 | Work Completed |
| Loc 21-1 ; 4919 Ruggles Street | $ | 11,071.28 | $ | 11,071.28 | Work Completed |
| Loc 22-1 ; 3916 N. 41st Street | $ | 12,139.55 | $ | 12,139.55 | Work Completed |
| Loc 23-1 ; 5333 N. 35th Street | $ | - | $ | - | No Damage Found |
| Loc 27-1 3502 45th Avenue | $ | - | $ | - | No Damage Found |
| Loc 28-1 3182 Fowler Avenue | $ | - | $ | - | No Damage Found |
| Loc 29-1 3519 N. 44th Avenue | $ | 11,597.56 | $ | 11,597.56 | Work Completed |
| Loc 30-1 1723 N. 33rd Street | $ | - | $ | - | No Damage Found |
| Loc 31-1 10834 Emmet Street | $ | - | $ | - | Contents only no damage |
| Loc 32-1 3204 Taylor Street | $ | - | $ | - | No Damage Found |
| Loc 33-1 3173 Meredith Avenue | $ | - | $ | - | No Damage Found |
| Loc 34-1 4137 Lake Street | $ | 13,788.06 | $ | 13,788.06 | Work Completed |
| Loc 35-1 - 8 Building H | $ | 122,734.07 | $ | 122,734.07 | Repairs Only |

| | | | |
|---|---|---|---|
| Loc 35-1 - 8 Building T | $ 45,304.60 | $ 45,304.60 | Repairs Only |
| Loc 35-1 - 8 Building V | $ 30,820.24 | $ 30,820.24 | Repairs Only |
| Loc 35-1 - 8 Building M | $ 28,144.92 | $ 28,144.92 | Repairs Only |
| Loc 35-1 - 8 Building P | $ 30,253.84 | $ 30,253.84 | Repairs Only |
| Loc 36-1 4221 Bedford Street | $ - | $ - | No Damange Found |
| Loc 37-1 Bedford Street | $ - | $ - | No Damange Found |
| Loc 43-1 1023 N. 40th Street | $ 50,464.58 | $ 27,755.52 | Estimate |
| Loc 44-1 3426 Charles Street | $ - | $ - | No Damage Found |
| RCC Value | $ 527,741.41 | $ 498,469.27 | |
| Deductible | $ (10,000.00) | $ (10,000.00) | |
| Net Loss | $ 517,741.41 | $ 488,469.27 | |
| Hold-Back | $ (29,272.14) | $ - | |
| ACV Value | $ 488,469.27 | 488,469.27 | ACV Value |